1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   K. JAMEL WALKER,

11             Plaintiff,               No. 2:09-cv-0569 WBS KJN P

12        vs.

13   CALIFORNIA DEPARTMENT OF
     CORRECTIONS, et al.,
14
               Defendants.              FINDINGS AND RECOMMENDATIONS
15   _____/

16             Plaintiff, a state prisoner incarcerated at Mule Creek State Prison, under the

17   authority of the California Department of Corrections and Rehabilitation ("CDCR"), proceeds

18   without counsel in this civil rights action.  Plaintiff filed this action in the Sacramento County

19   Superior Court, on September 20, 2007.  Defendants removed the case to this court on February

20   27, 2009.  (Dkt. No. 2.)  Although several procedural problems beset the removal, the court

21   denied plaintiff's motion to remand because it was untimely filed.  (See Dkt. Nos. 12, 16.)  The

22   court thereafter dismissed several defendants, based on the finding that plaintiff's complaint fails

23   to state any potentially cognizable claims against them.  (See Dkt. Nos. 17, 19.)  The action now

24   proceeds against defendants Rush, Anaya, Price, Chavarria, Ryan, Bourland, and Nunez.

25   Pending is defendants' motion to dismiss.  (Dkt. No. 22.)  Plaintiff filed an opposition (Dkt. No.

26   30); defendants filed a reply (Dkt. No. 33).  For the following reasons, this court recommends

that defendants' motion be granted in part and denied in part, and that plaintiff be granted leave

to file an amended complaint.

I.  Background

Plaintiff's complaint (Dkt. No. 2 at 5-33)[1] ("complaint") is densely worded, both

factually and legally, and somewhat difficult to construe.  Plaintiff's claims are premised on his

allegations that defendants, acting individually and in concert, denied plaintiff his right to have

confidential telephone calls with his attorney.  Plaintiff further contends that defendants acted in

retaliation for plaintiff's pursuit of a separate civil rights action (Walker v. Gomez et al., Case

No. 03:96-cv-0609 PCL);[2] and then in retaliation for plaintiff filing an administrative grievance

challenging defendants' actions.  As this court noted on initial screening, the complaint alleges a

broad "first cause of action" that "combines plaintiff's claims that his rights to privacy, due

process, and to petition the government for redress of grievances, were violated under the First,

Fourth, and Fourteenth Amendments to the United States Constitution, and Article I of the

California Constitution," and alleges five additional "causes of action" that "assert an amalgam

of alleged violations of state statutory and constitutional law."  (Dkt. No. 17 at 5-6.)[3]  Plaintiff

---

[1]  Unless otherwise noted, references to pages contained in filed documents reflect the
court's electronic pagination ("CM/ECF"), which may not coincide with the internal pagination
of the document.

[2]  Defendants' request for judicial notice of the docket in Walker v. Gomez, et al., Case
No. 03:96-cv-0609 PCL, is granted.  (See Dkt. No. 23.)  See Fed. R. Evid. 201 (a court may take
judicial notice of facts that are capable of accurate determination by sources whose accuracy
cannot reasonably be questioned); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980)
(court may take judicial notice of court records).

[3]  In pertinent part, plaintiff entitled his causes of action as follows (Cmplt. at ¶¶ 53-93):

First Cause of Action:          "Action for Damages, 42 U.S.C. § 1983"

Second Cause of Action:    "State Claim for Intentional Tort, re. Cal. Penal Code §
                                          636(b) and § 637.2"

Third Cause of Action:       "State Tort Claim of Intentional Violation of Privacy, re.
                                          Cal. Civil Code § 52.1(b)"

1   seeks statutory, compensatory and punitive damages, as well as declaratory and injunctive relief.

2     The court addresses the merits of defendants' motion to dismiss in the following

3   sequence:  the court first identifies the allegations and claims that plaintiff administratively

4   exhausted; then, the court determines whether state law claims are precluded under the

5   requirements of the California Tort Claims Act; the court then reviews plaintiff's claims for

6   injunctive and declaratory relief; thereafter, the court considers whether the remaining matters

7   state potentially cognizable claims for relief.

8   II.  Exhaustion of Administrative Remedies

9     A.  Legal Standards

10    The Prison Litigation Reform Act ("PLRA") provides that, "[n]o action shall be

11  brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by

12  a prisoner confined in any jail, prison, or other correctional facility until such administrative

13  remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Pursuant to this rule, prisoners

14  must exhaust their administrative remedies regardless of the relief they seek, i.e., whether

15  injunctive relief or money damages, even though the latter is unavailable pursuant to the

16  administrative grievance process.  Booth v. Churner, 532 U.S. 731, 741 (2001).  Exhaustion also

17  requires that the prisoner complete the administrative review process in accordance with all

18  applicable procedural rules.  Woodford v. Ngo, 548 U.S. 81 (2006).

19    The PLRA requires that administrative remedies be exhausted prior to filing suit.

20  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).  However, the exhaustion requirement is not

21  jurisdictional, but an affirmative defense that may be raised by a defendant in a motion to dismiss

| | |
|---|---|
| Fourth Cause of Action: | "State Law Retaliation Claims re. Art. I, §§ 2a, 3, 7a, Art. 8, [15 Cal. Code Reg.] § 3084.1" |
| Fifth Cause of Action: | "Claim for Injunctive Relief, re. Cal. Penal Code § 637.2(b) & Cal. Code Civil Procedure § 525" |
| Sixth Cause of Action: | "Claim for Declaratory Relief, re. Cal. Code Civil Procedure § 1060 & Title 28 U.S.C. § 2201" |

3

1  pursuant to Federal Rule of Civil Procedure 12(b).  See Jones v. Bock, 549 U.S. 199, 216 (2007)

2  ("inmates are not required to specially plead or demonstrate exhaustion in their complaints");

3  Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir. 2003) (failure to exhaust is an affirmative

4  defense).  Defendants bear the burden of raising and proving the absence of exhaustion, and their

5  failure to do so waives the defense.  Id. at 1119.

6          "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the

7  court may look beyond the pleadings and decide disputed issues of fact."  Wyatt, 315 F.3d at

8  1119.  "I[f] the district court looks beyond the pleadings to a factual record in deciding the

9  motion to dismiss for failure to exhaust -- a procedure closely analogous to summary judgment --

10 then the court must assure that [the prisoner] has fair notice of his opportunity to develop a

11 record."  Id. at 1120 n.14.  When the district court concludes that the prisoner has not exhausted

12 administrative remedies on a claim, "the proper remedy is dismissal of the claim without

13 prejudice."  Id. at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005) ("mixed"

14 complaints may proceed on exhausted claims).  Thus, "if a complaint contains both good and bad

15 claims, the court proceeds with the good and leaves the bad."  Jones, 549 U.S. at 221.

16         "The level of detail in an administrative grievance necessary to properly exhaust a

17 claim is determined by the prison's applicable grievance procedures."  Jones, supra, 549 U.S. at

18 218.  In California, prisoners are required to lodge their administrative complaint on a CDC Form

19 602, which requires only that the prisoner "describe the problem and action requested."  Cal.

20 Code Regs. tit. 15, § 3084.2(a).  In Griffin v. Arpaio, 557 F.3d 1117 (9th Cir. 2009), the Ninth

21 Circuit Court of Appeals adopted the standard enunciated by the Seventh Circuit, which provides

22 that "when a prison's grievance procedures are silent or incomplete as to factual specificity, 'a

23 grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"

24 Griffin, 557 F.3d at 1120 (reviewing Arizona procedures), quoting Strong v. David, 297 F.3d

25 646, 650 (7th Cir. 2002).  Thus, in California, "[a] grievance need not include legal terminology

26 or legal theories unless they are in some way needed to provide notice of the harm being grieved.

1   A grievance also need not contain every fact necessary to prove each element of an eventual legal

2   claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its

3   resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120; accord, Morton v.

4   Hall, 599 F.3d 942, 946 (9th Cir. 2010).

5           "[E]xhaustion is not per se inadequate simply because an individual later sued was

6   not named in the grievances."  Jones, 549 U.S. at 219.  It is nonetheless appropriate to require

7   that a prisoner demonstrate, through the administrative grievance process and consistent with the

8   PLRA, that he has standing to pursue his claims against a particular defendant.  "[A]t an

9   irreducible minimum, Art[icle] III [of the United States Constitution] requires the party who

10  invokes the court's authority to 'show that he personally has suffered some actual or threatened

11  injury as a result of the putatively illegal conduct of the defendant.'"  Valley Forge Christian

12  College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982)

13  (quoting Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979).

14      B.  Discussion

15          During the relevant period of time, plaintiff exhausted seven administrative

16  grievances.  These grievances have been identified, and duplicated for the court, by Calipatria

17  State Prison Appeals Coordinator J. Jimenez.  See Jimenez Decl. (Dkt. No. 22-2.)  The court's

18  review of all seven grievances,[4] each denied at the Director's Level Review, demonstrates that

19  only two grievances contain allegations relevant to this action, Log No. CAL-05-02249, and Log

20  No. CAL-05-02594.

21          In Log No. CAL-05-02249, initially submitted on November 9, 2005, plaintiff

22

23  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

24      [4] Plaintiff exhausted the following seven administrative grievances during the relevant
    time period while incarcerated at Calipatria State Prison:  Log. No. CAL-05-00663 (denied at
    Director's Level Review on April 12, 2005); Log No. CAL-05-01204 (denied July 11, 2005);
25  Log No. CAL-05-01410 (denied August 14, 2005); Log No. CAL-05-01280 (denied June 19,
    2005); Log No. CAL-05-02249 (denied November 9, 2005); Log No. CAL-05-02594 (denied
26  December 22, 2005); and Log No. CAL-05-01053 (denied December 18, 2006).

alleged that defendants[5] Ryan, Nunez, Chavarria, Rush, and Anaya, "entered into a conspiracy and/or were grossly negligent . . . in prevent[ing] [plaintiff] from the enjoyment of his constitutional and statutory right to privacy by non-electronically eavesdropping on [plaintiff's] telephone conversations with his attorney, so as to gain an advantage in the ongoing civil rights litigation between [plaintiff] and the defendants . . . in the matter, Walker v. Gomez, et al." (Dkt. No. 30 at 37, 43.)   Plaintiff alleged that "staff in the Litigations Office," specifically, Litigation Coordinator Nunez, "acting as [an] agent on behalf of the [other] defendants referred to herein," "contacted K. Rush and D. Anaya and informed them I would be receiving telephone calls from my attorney, and it was permissible to eavesdrop on my attorney calls because they were not confidential." (Id. at 43.)   As a result, plaintiff alleged, he was deceived into believing that he "had no choice but to be and to remain in a position and proximity which would permit them to eavesdrop on [plaintiff's] telephone calls with his attorney." (Id.)   Plaintiff alleged that the named staff members "breached their legal and ethical duty" to inform plaintiff that he could speak confidentially with his attorney by telephone. (Id.)   Plaintiff asserted that, thereafter, when he "attempted to take steps to safeguard his rights," he was retaliated against in the following ways:  (1) that Anaya told plaintiff that he had only two options, to continue having his calls monitored, or to be visited by his attorney; and (2) that plaintiff's telephone calls were reduced from 30 minutes to 15 minutes. (Id. at 44.)   Plaintiff concluded (id.):

> Although the actions alleged have been ongoing as far back as 2004, the most recent manifestations . . . consist[] of K. Rush and/or D. Anaya, non-electronically eavesdropping on my telephone calls with my attorney during the following five (5) dates:  9/13/05, 9/21/05, 10/26/05, 10/27/05, 10/28/05.

> Pursuant to these allegations, plaintiff asserted that the named staff members had

violated plaintiff's "right to privacy under Art. 1 § 1 of the California Constitution, and Chapter

---

[5]  The court does not include plaintiff's allegations against defendants who have already been dismissed from this action.  See Dkt. Nos. 17, 19 (dismissing defendants CDCR, Woodford, Tilton, Grannis, and Moreno).

1   1.5 (Invasion of Privacy)[,] § 636 of the California Penal Code, as well as my right to [be] free

2   from retaliation for exercising my State and Federal right of access to the courts."  (Dkt. No. 30

3   at 37.)

4          This grievance was denied at the First Level Review, on December 14, 2005, on

5   the ground that the "subject" telephone call, later identified only as plaintiff's 10/27/05 call, was

6   properly handled because it had not been pre-approved as a "confidential call," as required by

7   former Section 3282(g)(1) and (2), Title 15, California Code of Regulations.[6]  (Dkt. No. 30 at

8   40.)  The First Level Decision noted that, "[w]hen the [plaintiff] was done speaking with the

9   judge, his attorney got on the line and began talking with the appellant.  The telephone call was

10  not pre-approved . . ." (Id. at 40.)  The grievance was denied at the Second Level Review and

11  Director's Level Review for the same reasons (id. at 36, 39) concerning the one telephone call,

12  notwithstanding plaintiff's efforts to have all "five" of his identified calls addressed, and despite

13  his assertion that his calls were conducted not on "inmate phones," but on "the counselor's

14  phones," where confidential calls are normally made (id. at 41).  The claim was exhausted

15  pursuant to the Director's Level Decision issued April 28, 2006.

16         On December 22, 2005, plaintiff submitted Log No. CAL- 05-02594, a "staff

17  complaint," wherein he asserted that defendant Price, who interviewed plaintiff on December 7,

18  2005, pursuant to plaintiff's above-noted grievance (Log No. CAL-05-02249), threatened and

19  intimidated plaintiff because he had filed the grievance.  Plaintiff described the incident as

20

21         [6] Former 15 C.C.R. § 3282(g), which was amended in 2008, provided in pertinent part:

22      3281(g)(1) " . . . confidential calls may be approved on a case-by-case basis by the
        institution head or designee only upon written request from the inmate's attorney .
        . ."

23

24      3281(g)(2) " . . . it is within the discretion of the institution head or his/her
        designee to approve or deny a confidential call . . . a confidential call may be
        denied where the institution head or her/her designee determines that normal legal
25      mail or attorney visits were appropriate means of communication. . ."

26  See Dkt. No. 30 at 40; see also "History," 15 Cal. Code Regs. Ann., Item No. 9.

follows (Dkt. No. 30 at 51, 57):

> On 12/7/05, Capt. J. Price interviewed me concerning a complaint I
> filed against staff. . . . While trying to explain a remedy to prevent
> such acts from happening in the future, Capt. Price cut me off, and
> proceeded to try and justify the actions of the involved staff.  When
> I tried to point out the futility of his attempts, he became frustrated,
> and told me[,] "I don't have time for this.  I told you guys about
> wasting my time with these 602's.  I have a yard to try to get up
> and running!  You may have one (sic) the last battle, but you won't
> win the next one.  The next time, you'll be the one in the hole!"
> When I tried to ask him what did he mean, he just stated, "You
> know what I mean.  [D]on't play games on my yard!'  I told him, I
> don't play games.  He said, it didn't matter what I said.  He said,
> "Both green and blue told me you were a "troublemaker."  I tried to
> tell him that I haven't caused trouble in the 2 ½ years I've been on
> D-Facility.  He then stated, "Just keep this in the back of your
> mind, the next time I hear you're playing games on my yard, you'll
> be in the hole!"  When I tried to defend myself from these baseless
> allegations, Price began yelling loudly, "You want to go the hole
> now?!  You want to go to the fucking hole right now?!"  I stated,
> no Sir.  He stated, "Then take heed to my words, and get out of my
> office.  I'm busy."  [¶]  I left his office, intimidated, wondering
> why he screamed at me that way, and threatened to put me in the
> hole.  I have the specific right not to be treated this way during an
> interview of my appeal.

Pursuant to these allegations, plaintiff requested "an unbiased, independent and thorough

investigation.  I want to be assured in writing that no further reprisals will be taken against me for

exercising my State and Federal Constitutional and Statutory rights to use the appeal system. . . ."

(Dkt. No. 30 at 51.)

This grievance was "partially granted" at the First Level Review, because an

investigation was conducted in response to plaintiff's allegations.  (Id. at 52, 55-56.)  Shortly

thereafter, on April 13, 2006, plaintiff was transferred to Mule Creek State Prison.  Nevertheless,

plaintiff sought and obtained a Second Level Review, which was "partially granted" due to the

investigation having been conducted.  (Id. at 52-54.)  The Director's Level Review decision was

issued September 27, 2006, denying plaintiff's grievance.  (Id. at 50.)

Pursuant to this review, the court finds that the following allegations, set forth in

plaintiff's complaint (and summarized here), were administratively exhausted:

a.   That, on September 13, 2005, October 26, 2005, October 27, 2005, and October

28, 2005,[7] defendants Ryan, Nunez, Chavarria, Rush and Anaya allegedly denied

plaintiff confidential telephone calls with his attorney; this conduct was allegedly

motivated by retaliation against plaintiff for pursuing another federal civil rights

action.[8]  (Complaint ("Cmplt.") at ¶¶ 13-18, 40-41.)

b.   That, on December 7, 2005, defendant Price, allegedly acting in retaliation for

plaintiff filing the above-noted administrative grievance, intimated and threatened

plaintiff.  (Cmplt. ¶ 29.)

However, the court finds that the following allegations, while set forth in

plaintiff's complaint, were not administratively exhausted, and therefore must be dismissed from

this action:

a.   That, on November 28, 2005, defendants Price and Chavarria allegedly retaliated

against plaintiff for filing his November 9, 2005 grievance (Log No.

CAL-05-02249), by conspiring to place an inmate, who had previously been

administratively segregated for conspiring to assault plaintiff, back into plaintiff's

facility; that defendants Price and Chavarria  "knew or should have known that

placing that inmate back on the facility would result in Plaintiff being assaulted

and placed in segregation."[9]  (Cmplt. ¶¶ 22-26.)

---

[7]  Although, in his administrative grievance, plaintiff also challenged the handling of his September 21, 2005 telephone call, that date is not referenced in the complaint.

[8]  These allegations reasonably include plaintiff's further allegation that, on November 3, 2005, plaintiff's attorney informed him that the litigation office would be shortening their calls from 30 minutes to 15 minutes, a change that plaintiff asserts was made in retaliation by defendants Rush, Anaya, Price and Chavarria.  (Id. ¶¶ 21, 42.)  These allegations also reasonably included plaintiff's allegation that, on November 30, 2005, defendant Anaya refused to step out of the litigation office during plaintiff's telephone call with his attorney.  (Id. ¶ 28.)

[9]  Given the allegedly alarming nature of these allegations, and the clear and readily available solution of denying or overturning the placement, plaintiff had an affirmative obligation to raise the matter before prison officials.  This is the type of grievance for which prison officials

1          b.      That, on March 21, 2006, and March 30, 2006, defendants Rush and Chavarria

2                  allegedly retaliated against plaintiff for filing his November 9, 2005 grievance

3                  (Log No. CAL-05-02249), by ordering another correctional officer (Partida) to

4                  handcuff plaintiff during his telephone calls with his attorney.[10]  (Cmplt. ¶¶ 31-

5                  33.)

6    III.  Legal Standards

7                  Defendants contend that plaintiff's state law claims should be dismissed due to

8    plaintiff's alleged failure to comply with the California Tort Claims Act.

9          A.  Legal Standards

10                 Under the California Tort Claims Act ("CTCA"), set forth in California

11   Government Code sections 810 et seq., a plaintiff may not bring a suit for monetary damages

12   against a public employee or entity unless the plaintiff first presented the claim to the California

13   Victim Compensation and Government Claims Board ("VCGCB" or "Board"), and the Board

14   acted on the claim, or the time for doing so expired.  "The Tort Claims Act requires that any civil

15   complaint for money or damages first be presented to and rejected by the pertinent public entity."

16   Munoz v. California, 33 Cal. App. 4th 1767, 1776 (1995).  The purpose of this requirement is "to

17   provide the public entity sufficient information to enable it to adequately investigate claims and

18   to settle them, if appropriate, without the expense of litigation."  City of San Jose v. Superior

19   _____

20   must be "put on notice" in order to "facilitate its resolution."  Griffin, 557 F.3d at 1120.

21        [10]  There is no allegation of handcuffing in either of plaintiff's exhausted grievances.
     While plaintiff's second grievance, commenced December 22, 2005, broadly sought "that no
22   further reprisals . . . be taken against me for exercising my rights . . . including but not limited to .
     . . harassment of my person," such a general request for relief cannot reasonably be construed to
23   sustain additional claims premised on subsequently-alleged official misconduct.  Moreover,
     plaintiff had ample opportunity to report the alleged handcuffing pursuant to his second
24   administrative grievance.  Plaintiff's requests for Second Level, and Director's Level, Reviews
     (made in May 2006, and June 2006, respectively) made no reference to plaintiff's allegations of
25   handcuffing in March 2006.  (See Dkt. No. 30 at 52.)  While prison officials were no longer in a
     position to resolve the matter, due to plaintiff's transfer, the alleged significance of the
26   challenged conduct was sufficiently important to the merits of plaintiff's second grievance that it
     should have been mentioned.

                                                        10

1 <u>Court</u>, 12 Cal.3d 447, 455 (1974) (citations omitted).  Compliance with this "claim presentation

2 requirement" constitutes an element of a cause of action for damages against a public entity or

3 official.  <u>State v. Superior Court (Bodde)</u>, 32 Cal. 4th 1234, 1244 (2004).  Thus, in the state

4 courts, "failure to allege facts demonstrating or excusing compliance with the claim presentation

5 requirement subjects a claim against a public entity to a demurrer for failure to state a cause of

6 action."  <u>Id.</u> at 1239 (fn. omitted).

7    Consistently, federal courts require compliance with the CTCA for pendant state

8 law claims that seek damages against state public employees or entities.  <u>Willis v. Reddin</u>, 418

9 F.2d 702, 704 (9th Cir. 1969); <u>Mangold v. California Public Utilities Commission</u>, 67 F.3d 1470,

10 1477 (9th Cir. 1995).  State tort claims included in a federal action, filed pursuant to 42 U.S.C. §

11 1983, may proceed only if the claims were first presented to the state in compliance with the

12 claim presentation requirement.  <u>United States v. California</u>, 655 F.2d 914, 918 (9th Cir. 1980);

13 <u>Karim-Panahi v. Los Angeles Police Department</u>, 839 F.2d 621, 627 (9th Cir. 1988); <u>Butler v.</u>

14 <u>Los Angeles County</u>, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).

15    To be timely, a claim must be presented to the VCGCB "not later than six months

16 after the accrual of the cause of action."  Cal. Govt. Code § 911.2.  Should a claimant miss this

17 deadline, the claimant may file a written application for leave to file a late claim, within a year

18 after the accrual of the cause of action.  <u>Id.</u>, § 911.4.  If the Board denies the application, the

19 notice of denial must include a warning to the claimant that no court action may be brought on

20 the claim unless the claimant first files a petition with the appropriate court requesting relief from

21 the claim presentation requirement, and obtains a court order granting such relief.  <u>Id.</u>, § 911.8.

22 Failure to obtain such relief bars any suit on the claim.

23    An individual who files a claim pursuant to the CTCA is charged with knowledge

24 of the applicable statute of limitations.  <u>See</u> <u>Hunter v. Los Angeles County</u>, 262 Cal. App. 2d

25 820, 822 (1968) ("once a claimant has filed his claim, he demonstrates familiarity with the

26 statutory procedures governing his grievance, and can reasonably be charged with knowledge of

1   the time limitations that are part of that procedure").

2       B. Discussion

3           Plaintiff filed only one relevant claim with the VCGCB,[11] which was signed by

4   plaintiff on June 14, 2006, and received by the Board on July 3, 2006.  See Declaration of J.

5   Reinmiller, Custodian of Records, VCGCB's Government Claims Program.  (Dkt. No. 22-4.)

6   The claim (Claim No. G-561548) was made, in pertinent part, against defendants Rush, Anaya,

7   Nunez, Chavarria, Ryan, Bourland and Price, based on "incidents" that allegedly occurred on

8   "9/13/05, 9/21/05, 10/26/05, 10/27/05, and 10/28/05."  (Dkt. No. 22-4 at 9.)  Plaintiff alleged

9   therein that the named officials "deliberately violated Penal Code § 636 when they eavesdropped

10  on confidential telephone calls between claimant and his attorney.  They also violated their own

11  regulations by forcing claimant to sit in a room while they eavesdropped on claimant's

12  confidential telephone calls."  (Id. at 10-11.)  Plaintiff further alleged that the named officials

13  "failed or refused to promulgate or publish a procedure that outlined my ability to send and

14  receive confidential telephone calls from claimant's attorney, as required by their own

15  regulations.  Instead, they verbally informed me that they must be present in the room while

16  claimant spoke to his attorney.  Because the named persons on whom this claim[] is filed knew

17  or should have known they were violating claimant's statutory rights under Penal Code § 636,

18  once I became aware of their violation, I filed an appeal challenging their violations; however,

19  the appeal was ignored, and they further attempted to cover-up their wrongdoing."  (Id. at 11.)

20          Plaintiff attached to his tort claim a copy of his pertinent administrative grievance

21  (Log No. CAL-05-2249), which had been exhausted on April 28, 2006.

22          On the face of the claim form, plaintiff answered "Yes" to the question, "Was the

23  incident more than six months ago?"  (Id.)  In an attached "Separate Statement of Presentation of

24

25  _____

     [11]  Plaintiff filed a second claim with the VCGCB during the relevant time period (Claim
     No. G-561547), which challenged the institutional practice of exposing prisoners to constant
     lighting, and requested that cells be retrofitted with light switches.  (See Dkt. No. 22-4 at 24-33.)

26  That claim is not relevant to the instant action.

1  Late Claim," plaintiff sought leave to file his claim outside the six-month deadline.  That

2  "Statement" provided in pertinent part (Dkt. No. 22-4 at 12):

> Claimant contends that his [late] claim should be accepted for the
> following reasons:[12]
>
> 1.   Claimant could not file this claim until he exhausted his
>      administrative remedies within the CDCR, which was
>      exhausted on 4/28/06.
>
> 2.   Claimant did not become aware that his rights were being
>      violated until shortly after the last incident of violation of
>      his statutory privacy rights under Penal Code § 636 on
>      10/28/05.

9   Assuming, liberally, that plaintiff's cause of action accrued on October 28, 2005

10  (the most recent incident of alleged misconduct), plaintiff had six months thereafter, or until

11  April 28, 2006, to timely submit his claim to the VCGCB.  However, plaintiff submitted his

12  claim on July 3, 2006, acknowledging that it was untimely, and requesting that he be granted

13  leave to file a late claim.

14   By letter dated November 20, 2006, the Board notified plaintiff that it had referred

15  plaintiff's application to file a late claim to the "affected State agencies for review and

16  recommendation."  (Dkt. No. 22-4 at 8.)  On December 27, 2006, the Board informed plaintiff

17  that staff had recommended the denial of plaintiff's application because it did not appear to meet

18  any of the requirements for accepting a late claim, as set forth in California Government Code

19  section 911.6, and, hence, that the Board intended to deny plaintiff's claim at its February 22,

20  2007 meeting.  (Id. at 6.)  As required, the Board informed plaintiff that, "[y]our next recourse,

21  should you wish to pursue the matter further, will be to file a petition in court for relief from the

22  requirements of Government Code Section 945.4."  (Id.)

23   Thereafter, in a letter dated March 2, 2007, the Board informed plaintiff that his

24

25  _____

26  [12] Plaintiff does not pursue, in opposing the instant motion, his third contention presented
    to the VCGCB, which asserted that a late claim was appropriate when "proof of actual damages
    is not required by statute."  (Dkt. No. 22-4 at 12.)

1  application to present a late claim was denied on February 2, 2007.  (Id. at 5.)  The letter again

2  informed plaintiff that, "[i]f you wish to file a court action on this matter, you must first petition

3  the appropriate court for an order relieving you from the provisions of Government Code 945.4.

4  (Claim presentation requirement).  See Government Code Section 946.6."  (Id.)  Plaintiff was

5  informed that he had six months from the date of the denial, or until August 2, 2007, to file such

6  petition.  (Id.)

7          However, plaintiff did not file, in any court, a petition for relief from the claim

8  presentation requirement.

9          Plaintiff now makes several arguments in support of his contention that his failure

10  to comply with the requirements of the CTCA should not preclude him from pursuing his state

11  law damages claims in the present action.

12          First, plaintiff avers that he reasonably believed that he was required to exhaust

13  his administrative remedies before filing his state tort claim.  Plaintiff directs the court's attention

14  to an excerpt from the California State Prisoners Handbook (Fourth Edition), that states in

15  pertinent part:

16          [I]n 2004, the Government Claims Board requiring prisoners to
            exhaust the 602 process before filing a Government Claims Form. .
17          . . Consequently the Board rescinded this policy and no longer
            requires prisoners to complete the 602 process before filing a
18          Board of Control Claim.

19  (Dkt. No. 30 at 10; see also Ex. A.)  The selected passage does not reasonably support plaintiff's

20  construction (unless plaintiff stopped reading after the first sentence).  Moreover, because

21  plaintiff failed to file a judicial petition for relief, he forfeited any alleged excuse premised on the

22  reasons for permitting such relief, including "mistake, inadvertence, surprise or excusable

23  neglect," Cal. Govt. Code § 911.6 (b)(1).  See e.g. Collins v. Los Angeles County, 241 Cal. App.

24  2d 451, 460 (1966) ("Having failed to rely on these sections to obtain relief by petition to file a

25  late claim, appellants are not now in a position to cite these sections in support of their

26  contentions herein.").

1    Plaintiff next argues that the limitations period for filing his state tort claim was

2  tolled pending the exhaustion of his administrative remedies.  While the statute of limitations for

3  bringing a civil action is tolled while a prisoner exhausts his administrative remedies, Brown v.

4  Valoff, 422 F.3d 926, 943 (9th Cir. 2005), plaintiff has cited no authority, and the court has

5  found none, that supports plaintiff's argument that the deadline for filing a state tort claim is

6  similarly tolled during the period of administrative exhaustion.[13]  Plaintiff generally relies on case

7  law that authorizes equitable tolling when a plaintiff, faced with alternate remedies, makes a

8  good faith decision to pursue one remedy, but is then belatedly required to pursue an alternate

9  remedy.  See Elkins v. Derby, 12 Cal.3d 410, 411 (1974) (tolling statute of limitations in

10 personal injury action for period during which plaintiff pursued his workers' compensation

11 remedy); Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006), and cases cited therein;

12 However, this exception is very narrow.  See e.g. Freeman v. State Farm Mut. Auto. Ins. Co., 14

13 Cal.3d 473, 489 (1975) (declining to apply the "several legal remedies" principle articulated in

14 Elkins, because it is limited to scenarios in which "the two kinds of proceedings required the

15 plaintiff to take inconsistent positions," and, thus, "requiring him to pursue the two concurrently

16 in different tribunals would result in an awkward duplication of procedures") (citing Elkins, 12

17 Cal. 3d at 412) (internal quotation marks omitted).  It cannot be said, in the instant case, that

18 plaintiff's exhaustion of administrative remedies required that he take a position inconsistent

19 with the claim he presented to the VCGCB.  Plaintiff's attachment of his administrative appeal to

20 his state tort claim underscores this point -- while compliance with the claim presentation

21 requirement would authorize a suit for damages, the same alleged facts and legal claims

22

---

23    [13]  Plaintiff's reliance on Wright v. State of California, 122 Cal. App. 4th 659 (2004), is
     misplaced.  The court in Wright found, in pertinent part, that the period of administrative
24   exhaustion tolled "the six-month time limit for filing a court action after the Board of Control
     rejects a government tort claim," id. at 671.  The court in Wright did not rule that the
25   administrative exhaustion period tolls the deadline for initiating a tort claim.  Moreover, the court
     held that plaintiff could not maintain his action because he filed his complaint before exhausting
26   his administrative remedies.

1  supported both plaintiff's tort claim and his administrative grievance.

2  Plaintiff's third argument is that the Board's allegedly belated notification to

3  plaintiff that his application to file a late claim had been rejected constitutes a waiver of

4  defendants' untimeliness defense.  Plaintiff cites no relevant authority.  As a practical matter, the

5  Board accorded plaintiff ample notice that his application to file a late claim would be denied.

6  (Dkt. No. 22-4 at 5, 6.)  Moreover, the Board twice instructed plaintiff that the appropriate course

7  for challenging the denial would be a court-filed petition for relief.  (Id.)  Because plaintiff did

8  seek such relief, his state tort damages claims are barred in this court.

9  Finally, plaintiff argues that it is within this court's discretion to consider

10  plaintiff's state tort claims, notwithstanding plaintiff's failure to meet the pertinent state filing

11  requirements.  While there appears to be a split of authority among California's district courts

12  whether a federal court (rather than a state superior court only) has jurisdiction to make a ruling

13  on a timely-filed petition for leave to file a late claim, see e.g. Garber v. City of Clovis, 698 F.

14  Supp. 2d 1204, 1210 (E.D. Cal. 2010), and cases cited therein, those federal courts that have

15  assumed jurisdiction of such petitions have done so pursuant to a timely-filed petition in federal

16  court.  See e.g. Rahimi v. National R.R. Passenger Corp. (Amtrak), 2009 WL 1883756, *4 (N.D.

17  Cal. 2009); Perez v. Escondido, 165 F. Supp.2d 1111, 1115 (S.D. Cal. 2001).  In contrast, before

18  plaintiff initiated this action in state court, he should first have filed a petition for relief in that

19  court.  This court is without authority to construe plaintiff's belated argument, set forth in his

20  opposition to defendants' motion to dismiss, as a timely petition under Section 946.6.  Therefore,

21  this court is without jurisdiction to adjudicate plaintiff's request for relief from California's claim

22  presentation requirement.[14]

23  As a result of plaintiff's failure to comply with the requirements of the California

24  Tort Claims Act, the court finds that plaintiff is precluded from pursuing his state law damages

25

26  [14]  Moreover, if the court has such discretion, it declines to exercise it herein.

1  claims.

2  IV.  Claims for Injunctive and Declaratory Relief

3          Plaintiff's requests for injunctive relief, premised on both state and federal law,

4  were rendered moot upon plaintiff's transfer to Mule Creek State Prison.[15]  Therefore, plaintiff's

5  requests for injunctive relief should be dismissed.

6          Because plaintiff may seek neither injunctive relief nor damages pursuant to his

7  state law claims, this court recommends dismissal of each of plaintiff's state law claims, set forth

8  in his "causes of action" two through five.  (See Cmplt. at ¶¶ 66-87.)

9          Plaintiff's sixth cause of action, for declaratory relief, should also be dismissed.

10  (Id. at ¶¶ 88-93.)  To the extent this cause of action is premised on state law, dismissal is clearly

11  warranted.  To the extent that plaintiff's sixth cause relies on federal law, this court declines to

12  exercise its discretionary authority, under 28 U.S.C. § 2201, to offer federal declaratory relief.

13  See Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995).

14          For these reasons, the court recommends dismissal of each of plaintiff's state law

15  claims, as well as plaintiff's federal claims for injunctive and declaratory relief.  Remaining are

16  plaintiff's damages claims premised on federal law, as set forth in plaintiff's "First Cause of

17  Action" (Cmplt. at ¶ 53-65), and reasonably construed herein.

18  V.  Potentially Cognizable Claims

19          Defendants contend that each of plaintiff's federal claims should be dismissed

20  pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

21      A.  Legal Standards

22          A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6),

23  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

24

25          [15]  Plaintiff's allegation that the challenged practice of denying plaintiff confidential calls
    continued "between April 28, 2006 and the present"(Cmplt. ¶ 34), after his transfer to Mule
26  Creek State Prison, is not properly before this court.

17

Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide a "short and plain

statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also

Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  In order to survive dismissal for

failure to state a claim, a complaint must contain more than "a formulaic recitation of the

elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to

relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007).

"A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as

true, it contains 'enough facts to state a claim to relief that is plausible on its face.'"  Coto

Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009)).  "'A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.'"  Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th

Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).  The court accepts "all facts alleged as true and

construes them in the light most favorable to the plaintiff."  County of Santa Clara v. Astra USA,

Inc., 588 F.3d 1237, 1241 n.1 (9th Cir. 2009).  The court is "not, however, required to accept as

true conclusory allegations that are contradicted by documents referred to in the complaint, and

[the court does] not necessarily assume the truth of legal conclusions merely because they are

cast in the form of factual allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks

omitted).

　　　　　In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may

generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

and matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of

Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  However,

under the "incorporation by reference" doctrine, a court may also review documents "whose

contents are alleged in a complaint and whose authenticity no party questions, but which are not

1   physically attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th

2   Cir. 2005) (citation omitted and modification in original).  The incorporation by reference

3   doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a

4   document, the defendant attaches the document to its motion to dismiss, and the parties do not

5   dispute the authenticity of the document, even though the plaintiff does not explicitly allege the

6   contents of that document in the complaint." Id.

7            The court's assessment of cognizable federal claims set forth in plaintiff's "First

8   Cause of Action," is also guided by the principles of administrative exhaustion, wherein the

9   underlying relevant administrative grievances need not have identified every fact, defendant or

10  legal theory, only that the allegations therein may reasonably be construed to include the alleged

11  wrongs and named defendants identified in the suit. See Jones, 549 U.S. at 219; Griffin, 557

12  F.3d at 1120.

13           B.  Discussion

14               1.  Attorney Calls

15           Plaintiff alleges that defendants violated his rights under the First, Fourth, and

16  Fourteenth Amendments, and the attorney-client privilege, when they interfered with plaintiff's

17  telephone calls with his attorney.  For the following reasons, the court finds that plaintiff may

18  state potentially cognizable claims under the Fourth and Fourteenth Amendment.  However, the

19  court recommends that plaintiff be granted leave to file an amended complaint that may include

20  any of the following claims (but no others).

21               a.  First Amendment

22           "Prisoners have a First Amendment right to telephone access, subject to

23  reasonable security limitations." Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (citing

24  Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986) (see cases cited therein)),

25  amended by 135 F.3d 1318 (9th Cir. 1998); accord Halvorsen v. Baird, 146 F.3d, 680, 689 (9th

26  Cir. 1998); Carlo v. City of Chino, 105 F.3d 493, 496 (9th Cir. 1997); Henry v. County of Shasta,

                                            19

1   132 F.3d 512, 519 (9th Cir. 1997); Young v. Seling, 72 Fed. Appx. 657, 659 (9th Cir. 2003);

2   Johannes v. County of Los Angeles, 2011 WL 6149253, *12 (C.D. Cal. 2001); Golden v. County

3   of Tulare, 2009 WL 2407708 (E.D. Cal. 2009).  However, the Ninth Circuit has emphasized that

4   this right lacks definition, and may readily be subsumed by reasonable regulation.  "The genesis

5   of this purported [First Amendment] constitutional right to use a telephone is obscure.  Our cases

6   have not identified the source of the right, and our pronouncements of its existence have been

7   conclusory and unnecessary to the decisions."  Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th

8   Cir. 2002), cert. den. 538 U.S. 1047 (2003).   "[A] prison inmate retains [only] those First

9   Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate

10  penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974).

11  The reasonableness of a prison regulation (or policy, practice or decision), including one that

12  restricts a prisoner's right to telephone access, is assessed pursuant to the factors articulated in

13  Turner v. Safely, 482 U.S. 78, 89-90 (1986).[16]  Valdez, 302 F.3d at 1048-49.

14          Significantly, plaintiff does not challenge the constitutionality of the state

15  regulation that governs prisoners' telephone access.  The subject regulation, Section 3282, Title

16  15, California Code of Regulations ("Section 3282"), is premised in part on the statutory rights

17  accorded to prisoners by California Penal Code section 636 (proscribing, in pertinent part, the

18  eavesdropping or recording of a confidential communication between a prisoner and his

19  attorney), Section 637 (proscribing the disclosure of such confidential communications to third

20  parties), and Section 637.2 (providing a private right of action, for statutory damages, against any

21  person who violates the proscriptions set forth in Sections 636 or 637).  Section 3282(g) sets

22

23          [16]  As summarized by the Ninth Circuit, these factors are: "(1) whether there is a valid,
    rational connection between the restriction and the legitimate governmental interest put forward
24  to justify it; (2) whether there are alternative means of exercising the right; (3) whether
    accommodating the asserted constitutional right will have a significant negative impact on prison
25  guards and other inmates, and on the allocation of prison resources generally; and (4) whether
    there are obvious, easy alternatives to the restriction showing that it is an exaggerated response to
26  prison concerns."  Valdez, 302 F.3d at 1049, citing Turner, 482 U.S. at 89-90, and Mauro v.
    Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc).

1  forth the procedures by which a prisoner may place or receive a confidential attorney call,

2  including the requirement that the inmate's attorney request in writing, and obtain, prior approval

3  for the call.  See Section 3282(g)(1)-(4).  The approval or denial of such requests, and the

4  designated date, time, duration and place of an approved confidential call, are delegated to the

5  discretion of the "institution head or designee," "on a case-by-case basis."  Section 3282(g)(1),

6  (5), (6).  "As long as the attorney/client communication privilege is not violated, a confidential

7  call may be denied where the institution head, or his/her designee, determines that normal legal

8  mail or attorney visits were appropriate means of communication and were not reasonably

9  utilized by the inmate or attorney."  Section 3282(g)(6).

10           Plaintiff acknowledges that the alleged incidents of monitoring that he challenges

11  took placed in 2005, prior to implementation of pertinent amendments to Section 3282.[17]

12  However, while the February 2008 amendments clarified the procedures and content of an

13  attorney's request, including the necessity of obtaining an attorney background check, the

14  amendments do not appear to have materially changed the nature or substance of the process.

15  Prior to 2008, as now, "confidential calls [were] approved on a case-by-case basis by the

16  institution head or designee only upon written request from the inmate's attorney," and could be

17  "denied where the institution head or her/her designee determines that normal legal mail or

18  attorney visits were appropriate means of communication. . . ."  Section 3281(g)(1), (2) (2007).

19  See n.6, supra.

20  _____

21       [17]  Plaintiff asserts that the amendments to Section 3282 were a "direct result of
    [plaintiff's] 602 and Tort Claim."  (Dkt. No. 30 at 20, 21.)  Plaintiff directs the court's attention
22  to the following statement by CDCR, in its 2007 Notice of Proposed Regulations (id. at 68, 71):

23       These regulations are recommended by the Office of the Inspector General based
         on a confidential phone call that was granted between an attorney and inmate
24       without following proper procedure, and are necessary to specify and standardize
         the process that [an] attorney must complete in order to receive approval for a
25       confidential phone call with an inmate.  This will provide clarity, consistency and
         standardization on regulations governing confidential calls for the Department of
26       Corrections and Rehabilitation.

1    Plaintiff contends that defendants failed to comply with Section 3282, in three

2    ways:[18]  (1) by failing to inform plaintiff of the procedures for obtaining a confidential attorney

3    call; (2) by purposefully misinforming plaintiff that his only options were a monitored call or a

4    visit by his attorney; and (3) by failing to observe the confidentiality of calls that were allegedly

5    pre-approved in compliance with Section 3282.

6    The court finds that these challenges fail to state a cognizable First Amendment

7    claim, based on the Ninth Circuit's reticence to clearly articulate such a right, and plaintiff's

8    reliance on (rather than challenge to) Section 3282.  However, because this court recommends

9    that plaintiff be granted leave to amend his complaint to more clearly articulate his Fourth and

10   Fourteenth Amendment claims, plaintiff should also be granted leave to again attempt to state a

11   potentially cognizable claim under the First Amendment.

12        b.  <u>Fourth Amendment</u>

13   To the extent that plaintiff contends that defendants failed to observe the

14   confidentiality of calls that were allegedly made in compliance with Section 3282, the Fourth

15   Amendment may be implicated.  "The Fourth Amendment is not triggered unless the state

16   intrudes into an area in which there is a constitutionally protected reasonable expectation of

17   privacy."  <u>U.S. v. Van Poyck</u>, 77 F.3d 285, 290 (9th Cir. 1996) (citations and internal quotation

18   marks omitted).  The Ninth Circuit has recognized that a prisoner may have a reasonable

19   expectation of privacy, under the Fourth Amendment, in a "properly placed" telephone call with

20   ////

21   ////

22        [18]  Section 1983 does not provide a cause of action for the alleged violation of a state law,
23   but only provides a cause of action for violations of the federal "Constitution and laws."  42
     U.S.C. § 1983; <u>see</u> e.g. <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 117
24   (1984) ("a federal suit against state officials on the basis of state law contravenes the Eleventh
     Amendment").  "To the extent that the violation of a state law amounts to the deprivation of a
25   state-created interest that reaches beyond that guaranteed by the federal Constitution, Section
     1983 offers no redress."  <u>Lovell v. Poway Unified School District</u>, 90 F.3d 367, 370 (9th Cir.
26   1996) (citations omitted).

1   his attorney.[19]  Id. at 291 n.9.

2          The court cannot determine, pursuant to the instant complaint, which of the

3   subject calls plaintiff alleges were "properly placed," in compliance with Section 3282 (as it then

4   existed), or the alleged roles of each defendant.  Therefore, this court recommends that plaintiff

5   be granted leave to amend his complaint so that he may more clearly articulate potential Fourth

6   Amendment claims, based on his allegations that specific defendants improperly monitored

7   plaintiff's specifically approved confidential calls.

8                    c.  Fourteenth Amendment

9          To the extent that plaintiff contends that defendants failed to inform him of the

10  procedures for placing or receiving confidential attorney calls and/or purposefully misled

11  plaintiff regarding his options, the Fourteenth Amendment may be implicated.  Plaintiff's

12  contentions that defendants violated Section 3282, and thereby denied him the process to which

13  he was allegedly entitled, may state a potentially cognizable claim under the procedural

14  guarantees of the Due Process Clause.

15         The most analogous Ninth Circuit case appears to be Carlo v. City of Chino, 105

16  F.3d 493 (9th Cir. 1997), in which the court found that California Penal Code section 851.5 --

17  which requires that individuals be informed within three hours of arrest, "except where

18  physically impossible," that they have the right to make three completed telephone calls -- creates

19  a state liberty interest, subject to the procedural protections of the Fourteenth Amendment.  Id. at

20  496-500.  The court held that "the right granted by the statute is one of 'real substance' and

21  merits constitutional due process protections."  Id. at 500, quoting Wolff v. McDonnell, 418 U.S.

22  639, 557 (1974).  Accord Gallagher v. City of Winlock, 287 Fed. Appx. 568, 576 n.7 (9th Cir.

23  2008) (construing, in dicta, a liberty interest in a Washington state statute that accords

24

25           [19]  For the reasons set forth above, plaintiff is precluded from directly pursuing a state
      damages claim pursuant to California Penal Code section 637.2, premised on an alleged violation
      of California Penal Code section 636 (rendering it a crime to eavesdrop on a prisoner's
26    conversation with his attorney).

1  individuals arrested for criminal offenses with the "right to call a lawyer").

2      However, Carlo may be distinguishable from the instant case in important ways.

3  In assessing whether the statute at issue created a protected liberty interest, the Ninth Circuit

4  relied on Supreme Court cases finding liberty interests only in state provisions that are both

5  "mandatory" and "cannot be eviscerated absent meeting specific substantive preconditions."

6  Carlo, 105 F.3d at 497, citing Hewitt v. Helms, 459 U.S. 460, 471-72 (1983).  The Ninth Circuit

7  noted subsequent Supreme Court decisions that appear to establish an even higher threshold, viz.,

8  "recognizing liberty interests in state laws [only] where they grant 'freedom from restraint . . .

9  which imposes atypical and significant hardship . . ..'"  Carlo, 105 F.3d at 498-99, quoting

10 Sandin v. Conner, 515 U.S. 472, 484 (1995).

11     The telephone access rights accorded to inmates by Section 3282 appear to be less

12 compelling than those accorded to arrestees pursuant to Penal Code section 851.5.  The right of a

13 convicted felon to confidential attorney calls, pursuant to Section 3282, is not clearly

14 "mandatory," and the discretion accorded the "institution head" in deciding whether to grant such

15 access is limited only by his determination "that normal legal mail or attorney visits . . . were not

16 reasonably utilized."  Section 3282(g)(6).

17     Nevertheless, the Ninth Circuit, without undertaking such an analysis, has

18 recognized in other cases a Fourteenth Amendment right of prisoners to have meaningful access

19 to the courts, which has been construed to include the opportunity to have private conversations

20 with one's attorney.  See Ching v. Lewis, 895 F. 2d 608, 609 (9th Cir. 1990) (prisoner's

21 Fourteenth Amendment right to have meaningful access to the courts includes contact visits with

22 counsel, because "[t]he opportunity to communicate privately with an attorney is an important

23 part of that meaningful access") (citation omitted); accord Barnett v. Centoni, 31 F.3d 813, 816

24 (9th Cir. 1994); Meyers v. Pope, 303 Fed. Appx. 513, 516 (9th Cir. 2008) ("[t]he right of access

25 to courts has been found to encompass the right to talk in person and on the telephone with

26 counsel in confidential settings") (citation and internal quotation marks omitted).

1          Pursuant to these authorities, the court finds that plaintiff may state a potentially

2   cognizable Fourteenth Amendment claim.  However, the court cannot determine, pursuant to the

3   instant complaint, which of plaintiff's calls may be actionable under the Fourteenth Amendment,

4   or the alleged role of each defendant.  Therefore, this court recommends denial of defendants'

5   motion to dismiss on this ground, and further recommends that plaintiff be granted leave to file

6   an amended complaint that clarifies his Fourteenth Amendment claim against the appropriate

7   defendants.

8                    d.  Attorney-Client Privilege

9          As framed, plaintiff fails to state a cognizable claim pursuant to the attorney-client

10  privilege.  The parties' discussion whether plaintiff "waived" his attorney-client privilege,

11  because he "chose" to proceed with his calls in the presence of third parties, would appear to be

12  applicable only to "properly placed" calls, which, to the extent they occurred, have not been

13  clearly identified in the complaint.

14          "The attorney-client privilege is the oldest of the privileges for confidential

15  communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389

16  (1981).  "Except as otherwise required by an Act of Congress or in rules prescribed by the

17  Supreme Court . . . privilege . . . shall be governed by the principles of the common law as they

18  may be interpreted by the courts of the United States in the light of reason and experience . . . ."

19  Fed. R. Evid. 501.  The Ninth Circuit has explained that the attorney-client privilege applies, "(1)

20  where legal advice of any kind is sought (2) from a professional legal advisor in [her] capacity as

21  such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client,

22  (6) are at his instance permanently protected (7) from disclosure by himself or by the legal

23  advisor, (8) except the protection be waived."  United States v. Landof, 591 F.2d 36, 38 (9th Cir.

24  1978).  However, "[t]he attorney-client privilege is an evidentiary rule designed to prevent the

25  forced disclosure in a judicial proceeding of certain confidential communications between a

26  client and a lawyer. . . .[T]he rule does not apply where there is no forced disclosure of a

                                            25

1   confidential communication in a judicial proceeding." Wharton v. Calderon,127 F.3d 1201,

2   1205 (9th Cir. 1997) (citation and internal quotation marks omitted).[20]

3          Subject to these considerations, the court recommends that plaintiff be permitted

4   the opportunity, in an amended complaint, to further develop this claim.

5          2. Retaliation Claims

6          Plaintiff alleges violation of his First Amendment right to access the courts, and to

7   pursue administrative grievances, by: (1) defendants Ryan, Nunez, Chavarria, Anaya and Rush

8   allegedly interfering with plaintiff's right to make confidential attorney calls, in retaliation for

9   plaintiff pursuing a separate civil rights action, Walker v. Gomez, et al., Case No. 03:96-cv-0609

10  PCL; and (2) by defendant Price allegedly harassing plaintiff and threatening to place him in

11  administrative segregation, in retaliation for plaintiff filing an administrative grievance

12  (challenging the denial of confidential attorney calls).[21]

13         To state a claim for retaliation under the First Amendment, a plaintiff must allege

14  that, on a specific date, an individual state actor took an adverse action against plaintiff in

15  retaliation for plaintiff engaging in a constitutionally protected activity, and that the adverse

16  action did not reasonably advance a legitimate penological objective. Rhodes v. Robinson, 408

17  F.3d 559, 567-68 (9th Cir. 2005);[22] Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985).

18

19         [20] Appropriately, plaintiff does not allege a violation of his Sixth Amendment right to
20  counsel. "As to the Sixth Amendment, its reach is only to protect the attorney-client relationship
    from intrusion in the criminal setting[.]" Wolff v. McDonnell, 418 U.S. 539, 576 (1974)
21  (citations omitted); see e.g. Williams v. Woodford, 384 F.3d 567, 584-85 (9th Cir. 2004), and
    cases cited therein (absent an allegation of prejudice, there is no cognizable Sixth Amendment
22  claim). Here, plaintiff's communications with his attorney concerned another of plaintiff's
    federal civil rights cases, not a criminal proceeding.

23         [21] Plaintiff failed to exhaust his administrative remedies on his other retaliation claims.
    (See discussion, supra.)
24

25         [22] "Within the prison context, a viable claim of First Amendment retaliation entails five
    basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)
26  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's
    exercise of his First Amendment rights, and (5) the action did not reasonably advance a

1   Direct and tangible harm will support a First Amendment retaliation claim even without

2   demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights.

3   Rhodes, at 568 n.11.  "[A] plaintiff who fails to allege a chilling effect may still state a claim if

4   he alleges he suffered some other harm" as a retaliatory adverse action.  Brodheim v. Cry, 584

5   F.3d 1262, 1269 (9th Cir. 2009), citing Rhodes, 408 F.3d at 568, n.11.  Thus, plaintiff need not

6   prove that the adverse action allegedly taken violated a constitutional right.  Pratt v. Rowland, 65

7   F.3d 802, 806 (1995) (stating that to prevail on a retaliation claim, plaintiff need not "establish an

8   independent constitutional interest" was violated); see also, e.g., Hines v. Gomez, 108 F.3d 265,

9   268 (9th Cir.1997) (upholding jury determination of retaliation based on filing of a false rules

10  violation report);  Rizzo, supra, 778 F.2d at 531 (transfer of prisoner to a different prison

11  constituted adverse action for purposes of retaliation claim).  Rather, the interest asserted in a

12  retaliation claim is the right to be free of conditions that would not have been imposed but for the

13  alleged retaliatory motive.  However, not every allegedly adverse action will support a retaliation

14  claim.  See e.g. Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim

15  cannot rest on the logical fallacy of post hoc, ergo propter hoc, literally, "after this, therefore

16  because of this.").

17          The court finds that each of plaintiff's exhausted retaliation claims appears to be

18  potentially cognizable based on the allegations of the current complaint.  However, these claims,

19  and the factual allegations in support of these claims, should be refined and clarified in plaintiff's

20  amended complaint, without reference to plaintiff's unexhausted retaliation claims (i.e. plaintiff

21  should specify what actions each defendant allegedly took against plaintiff in retaliation and what

22  harm allegedly resulted).

23          3.  Additional Claims

24          In addition to the above-noted claims, plaintiff alleges throughout his complaint

25  _____

26  legitimate correctional goal."  Rhodes, supra, 408 F.3d at 567-68.

1   that defendants Ryan, Bourland, Nunez and Chavarria acted both directly and in their supervisory

2   capacities.  Plaintiff is informed that, to state a claim for relief under Section 1983 based on a

3   theory of supervisory liability, he must allege (and be able to prove) facts that the supervisory

4   defendants:  (1) personally participated in the alleged deprivation of constitutional rights, (2)

5   knew of the violations and failed to prevent them, and/or (3) promulgated or implemented a

6   policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving

7   force of the constitutional violation.  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)

8   (citations omitted); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Facts consistent

9   with at least one of these scenarios must be specifically alleged in order to state a potentially

10  cognizable claim against a supervisory defendant.

11          Plaintiff also repeatedly alleges, in the current complaint, that defendants were

12  engaged in a "civil conspiracy" to violate plaintiff's rights.  To state a claim for civil conspiracy,

13  under 42 U.S.C. § 1983, a plaintiff must allege that "two or more persons . . ., by some concerted

14  action, intend[ed] to accomplish some unlawful objective for the purpose of harming [plaintiff]

15  which results in damage."  Gilbrook v. City of Westminster, 177 F.3d 839, 856-57 (9th Cir.

16  1999) (en banc), quoting Vieux v. East Bay Regional Park District, 906 F.2d 1330, 1343 (9th Cir.

17  1990) (internal quotation marks omitted).  "[T]he party must provide material facts that show an

18  agreement among the alleged conspirators to deprive the party of his or her civil rights,"

19  Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir.1998) (citations omitted), and must identify the

20  alleged harm.  Facts alleged in support of a conspiracy theory must be specific, and clearly

21  articulate the alleged involvement of each identified defendant.

22          C.  Summary

23          For the foregoing reasons, this court recommends that defendants' motion to

24  dismiss plaintiff's federal claims be denied, and that plaintiff be granted leave to file an amended

25  complaint that clearly articulates each of his federal claims, and specifically identifies how each

26  defendant is allegedly implicated.

28

VI.  <u>Conclusion</u>

   For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

   1.  Defendants' motion to dismiss (Dkt. No. 22), should be granted in part, and denied in part.

   2.  Plaintiff's state law claims ("causes of action" two through five), and federal claims for injunctive and declaratory relief, should be dismissed without leave to amend.

   3.  This action should proceed only on plaintiff's federal damages claims under Section 1983 ("cause of action" one), against the current defendants (Ryan, Bourland, Nunez, Chavarria, Anaya, Rush, and Price), for the reasons set forth herein.

   4.  Plaintiff should be granted leave to file and serve, within thirty (30) days after the adoption of these findings and recommendations, an amended complaint that clearly alleges, against the appropriate defendants, only those federal claims addressed herein.  The amended complaint should be limited in length to twenty (20) pages, and should be typed and double-spaced.  Failure of plaintiff to timely file and serve an amended complaint that conforms to these parameters should result in the dismissal of this action.[23]

   These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within 14 days after service of the objections.  The parties are

////

////

////

---

[23]  Nothing herein is intended to preclude defendants from bringing a legally supported, fully developed motion to dismiss in response once plaintiff files such an amended complaint.

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: February 21, 2012

4

5                                    _____

6                                    KENDALL J. NEWMAN
                                     UNITED STATES MAGISTRATE JUDGE

7  walk0569.mtd

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26