1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   K. JAMEL WALKER,                              No. 2:09-cv-0569 WBS KJN P

12                  Plaintiff,

13        v.                                       SUPPLEMENTAL

14   CALIFORNIA DEPARTMENT                         FINDINGS AND RECOMMENDATIONS
     OFCORRECTIONS, et al.,
15
                    Defendants.
16

17   I.  Introduction

18        Plaintiff, a state prisoner currently incarcerated at Mule Creek State Prison, proceeds

19   without counsel and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. §

20   1983.  Pending is defendants' partially re-opened motion to dismiss, as applied to two of

21   plaintiff's First Amendment retaliation claims.  For the reasons that follow, the undersigned

22   recommends that the motion be granted in part, and denied in part.  In addition, this court

23   recommends that plaintiff's request to reinstate his state law claims be denied.

24   II.  Background

25        By order filed March 22, 2012, the district judge granted in part, and denied in part,

26   defendants' motion to dismiss (ECF No. 22), resulting in the dismissal without leave to amend of

27   plaintiff's state law claims and federal claims for injunctive and declaratory relief, and in the

28   dismissal with leave to amend of plaintiff's federal damages claims against defendants Ryan,

                                              1

1  Bourland, Nunez, Anaya, Price, Chavarria, and Rush.  (See ECF Nos. 34, 35.)  Thereafter,

2  plaintiff filed a First Amended Complaint.  (ECF No. 36.)

3          Subsequently, the Ninth Circuit Court of Appeals held, in <u>Woods v. Carey</u>, 684 F.3d 934

4  (9th Cir. July 6, 2012), that prisoners proceeding without counsel must be provided

5  contemporaneous notice of the requirements for opposing a motion to dismiss for failure to

6  exhaust administrative remedies, as set forth in <u>Wyatt v. Terhune,</u> 315 F.3d 1108 (9th Cir. 2003).

7  In the instant action, a <u>Wyatt</u> notice was never provided.[1]  Therefore, to comply with <u>Woods v.</u>

8  <u>Carey</u>, the court provided plaintiff with the requisite notice, and accorded plaintiff the opportunity

9  to re-open defendants' motion to dismiss, and the court's order thereon, for the limited purpose of

10 re-assessing only those of plaintiff's claims that were dismissed for failure to exhaust

11 administrative remedies.  (ECF No. 39.)  Plaintiff chose to re-open those matters.  (ECF No. 41.)

12         Accordingly, on December 26, 2012, the district judge vacated his dismissal of two of

13 plaintiff's retaliation claims against defendants Price, Chavarria and Rush, as set forth in

14 plaintiff's original complaint (ECF No. 2), and accorded the parties an opportunity to submit

15 additional briefing and exhibits on those claims (ECF No. 42).  Defendants filed a supplemental

16 memorandum (ECF No. 43), which the court considered in tandem with their original motion to

17 dismiss (ECF No. 22).  Plaintiff filed a supplemental opposition (ECF No. 44), which the court

18 considered in tandem with his original opposition (ECF No. 30).

19 III.  <u>Motion to Dismiss</u>

20         A.  <u>Legal Standards for Motion to Dismiss</u>

21         In the Ninth Circuit, motions to dismiss for failure to exhaust administrative remedies are

22 normally brought, as here, pursuant to an "unenumerated Rule 12(b)" motion, Federal Rules of

23 Civil Procedure.  <u>See</u> <u>Albino v. Baca</u>, 697 F.3d 1023, 1029 (9th Cir. 2012).  Review of an

24 exhaustion motion requires the court to look beyond the pleadings in "a procedure closely

25 analogous to summary judgment."  <u>Wyatt v. Terhune</u>, <u>supra</u>, 315 F.3d at 1119 n.14.  "In deciding

26 ───────────────────────────

27 [1] Because this action was removed by defendants from state court, this court had no occasion to order service of process on defendants, and thereby inform the parties of the <u>Wyatt</u> notice requirements.  Moreover, defendants did not provide a <u>Wyatt</u> notice when they filed their initial

28 motion to dismiss.

1   a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the

2   pleadings and decide disputed issues of fact."  Id. at 1119.

3         The Prison Litigation Reform Act (PLRA) provides that, "[n]o action shall be brought

4   with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

5   prisoner confined in any jail, prison, or other correctional facility until such administrative

6   remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Pursuant to this rule, prisoners

7   must exhaust their administrative remedies regardless of the relief they seek, i.e., whether

8   injunctive relief or money damages, even though the latter is unavailable pursuant to the

9   administrative grievance process.  Booth v. Churner, 532 U.S. 731, 741 (2001).  Exhaustion

10  requires that the prisoner complete the administrative review process in accordance with all

11  applicable procedural rules, including deadlines.  Woodford v. Ngo, 548 U.S. 81 (2006).

12  However, "a prisoner need not press on to exhaust further levels of review once he has received

13  all 'available' remedies at an intermediate level of review or has been reliably informed by an

14  administrator that no remedies are available."  Brown v. Yaloff, 422 F.3d 926, 935 (9th Cir.

15  2005).

16        The PLRA requires that available administrative remedies be exhausted prior to filing suit.

17  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).  The exhaustion requirement is not

18  jurisdictional, but an affirmative defense that may be raised by a defendant in a motion to dismiss

19  pursuant to Federal Rule of Civil Procedure 12(b).  See Jones v. Bock, 549 U.S. 199, 216 (2007)

20  ("inmates are not required to specially plead or demonstrate exhaustion in their complaints"); see

21  also Wyatt, 315 F.3d at 1117-19 (failure to exhaust is an affirmative defense).  Defendants bear

22  the burden of raising and proving the absence of exhaustion, and their failure to do so waives the

23  defense.  Id. at 1119.

24        When a district court concludes that a prisoner has not exhausted his available

25  administrative remedies on a claim, "the proper remedy is dismissal of the claim without

26  prejudice."  Wyatt, 315 F.3d at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir.

27  2005) ("mixed" complaints may proceed on exhausted claims).  Thus, "if a complaint contains

28  both good and bad claims, the court proceeds with the good and leaves the bad."  Jones, 549 U.S.

1    at 221.

2           B. <u>Legal Standards for Stating a First Amendment Retaliation Claim</u>

3           "Within the prison context, a viable claim of First Amendment retaliation entails five

4    basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

5    because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

6    exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

7    correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005) (fn. and citations

8    omitted).  At the pleading stage, the "chilling" requirement is met if the "official's acts would

9    chill or silence a person of ordinary firmness from future First Amendment activities.'"  <u>Id.</u> at

10   568, quoting <u>Mendocino Environmental Center v. Mendocino County</u>, 192 F.3d 1283, 1300 (9th

11   Cir. 1999).   However, direct and tangible harm will support a First Amendment retaliation claim

12   even without demonstration of a chilling effect on the further exercise of a prisoner's First

13   Amendment rights.  <u>Rhodes</u>, at 568 n.11.  "[A] plaintiff who fails to allege a chilling effect may

14   still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action.

15   <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009), citing <u>Rhodes</u>, 408 F.3d at 568, n.11.

16          The plaintiff need not prove that the alleged retaliatory action, in itself, violated a

17   constitutional right.  <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (1995) (to prevail on a retaliation claim,

18   plaintiff need not "establish an independent constitutional interest" was violated); <u>see also</u> <u>Hines</u>

19   <u>v. Gomez</u>, 108 F.3d 265, 268 (9th Cir. 1997) (upholding jury determination of retaliation based

20   on filing of a false rules violation report); <u>Rizzo v. Dawson</u>, 778 F.2d 527, 531 (transfer of

21   prisoner to a different prison constituted adverse action for purposes of retaliation claim).  Rather,

22   the interest asserted in a retaliation claim is the right to be free of conditions that would not have

23   been imposed but for the alleged retaliatory motive.  However, not every allegedly adverse action

24   will support a retaliation claim.  <u>See, e.g.</u>, <u>Huskey v. City of San Jose</u>, 204 F.3d 893, 899 (9th Cir.

25   2000) (retaliation claim cannot rest on "the logical fallacy of post hoc, ergo propter hoc, literally,

26   'after this, therefore because of this'") (citation omitted).

27          Filing administrative grievances and initiating litigation are protected activities, and it is

28   impermissible for prison officials to retaliate against prisoners for engaging in those activities.

                                                        4

1    Rhodes, 408 F.3d at 567-68.

2           C.  Relevant Exhausted Administrative Grievances

3           Plaintiff exhausted seven administrative grievances during the relevant period.  (ECF No.

4    34 at 5.)  Of those seven grievances, only two contained allegations relevant to this action, Log

5    No. CAL-05-02249, and Log No. CAL-05-02594.  (Id.)  The court previously reviewed and

6    summarized each of these grievances, as follows (id. at 5-8 (fns. omitted)):

7           1.  Log No. CAL-05-02249

8           In Log No. CAL-05-02249, initially submitted on November 9, 2005, plaintiff alleged that

9    defendants Ryan, Nunez, Chavarria, Rush, and Anaya, "entered into a conspiracy and/or were

10   grossly negligent . . . in prevent[ing] [plaintiff ] from the enjoyment of his constitutional and

11   statutory right to privacy by non-electronically eavesdropping on [plaintiff's] telephone

12   conversations with his attorney, so as to gain an advantage in the ongoing civil rights litigation

13   between [plaintiff] and the defendants . . . in the matter, Walker v. Gomez, et al."[2]  (Dkt. No. 30

14   at 37, 43.)  Plaintiff alleged that "staff in the Litigations Office," specifically, Litigation

15

16   [2] In Walker v. Gomez et al., Case No. 03:96-cv-0609 PCL (S.D. Cal.), plaintiff alleged, inter alia,
     a denial of equal protection based on race.  See Walker v. Gomez et al., 370 F. 3d 969 (9th Cir.
17   2004); and Walker v. Gomez et al., 101 Fed. Appx. 200, 2004 WL 1283988 (9th Cir. 2004).
     According to a March 11, 2009 order in the case, plaintiff's principal allegations and the
18   settlement terms of the action were as follows (Case No. 03:96-cv-0609 PCL (S.D. Cal.) (ECF
19   No. 321 at 2-3)):

20               In May of 1996, Walker brought suit against the California
                 Department of Corrections ("CDCR") and several named parties
21               claiming a denial of his right to equal protection because, during
                 three prison lockdowns, he was not allowed to resume his prison
22               job until after similarly situated inmates of other races. . . . [T]he
                 parties  reached a settlement which became effective July 4, 2006.
23               As part of the Settlement Agreement ("Agreement"), Walker would
                 be transferred from Calipatria State Prison to Mule Creek State
24               Prison and would be paid a sum of $10,300. Additionally, the
                 agreement contains three provisions [providing injunctive relief]. . .
25               . The Agreement was made final following a Settlement Disposition
                 Conference held on August 30, 2006 and the parties filed a Joint
26               Stipulation to Dismiss Action With Prejudice on September 11,
                 2006. [¶] Pursuant to the terms of the Agreement, Plaintiff was
27               transferred to Mule Creek State Prison on April 12, 2006.

28

                                         5

1   Coordinator Nunez, "acting as [an] agent on behalf of the [other] defendants referred to herein,"

2   "contacted K. Rush and D. Anaya and informed them I would be receiving telephone calls from

3   my attorney, and it was permissible to eavesdrop on my attorney calls because they were not

4   confidential."  (Id. at 43.)  As a result, plaintiff alleged, he was deceived into believing that he

5   "had no choice but to be and to remain in a position and proximity which would permit them to

6   eavesdrop on [plaintiff's] telephone calls with his attorney."  (Id.)  Plaintiff alleged that the

7   named staff members "breached their legal and ethical duty" to inform plaintiff that he could

8   speak confidentially with his attorney by telephone.  (Id.)  Plaintiff asserted that, thereafter, when

9   he "attempted to take steps to safeguard his rights," he was retaliated against in the following

10  ways:  (1) that Anaya told plaintiff that he had only two options, to continue having his calls

11  monitored, or to be visited by his attorney; and (2) that plaintiff's telephone calls were reduced

12  from 30 minutes to 15 minutes.  (Id. at 44.)  Plaintiff concluded (id.):

13
14              Although the actions alleged have been ongoing as far back as
                2004, the most recent manifestations . . . consist[] of K. Rush
15              and/or D. Anaya, non-electronically eavesdropping on my
                telephone calls with my attorney during the following five (5)
16              dates: 9/13/05, 9/21/05, 10/26/05, 10/27/05, 10/28/05.

17          Pursuant to these allegations, plaintiff asserted that the named staff members had violated

18  plaintiff's "right to privacy under Art. 1 § 1 of the California Constitution, and Chapter 1.5

19  (Invasion of Privacy)[,] § 636 of the California Penal Code, as well as my right to [be] free from

20  retaliation for exercising my State and Federal right of access to the courts."  (Dkt. No. 30 at 37.)

21          This grievance was denied at the First Level, on December 14, 2005, on the ground that

22  the "subject" telephone call, later identified only as plaintiff's October 27, 2005 call, was properly

23  handled because it had not been pre-approved as a "confidential call" under former Section

24  3282(g)(1) and (2), Title 15, California Code of Regulations.  (Dkt. No. 30 at 40.)  The First

25  Level decision noted that, "[w]hen the [plaintiff] was done speaking with the judge, his attorney

26  got on the line and began talking with the appellant.  The telephone call was not pre-approved . . .

27  ."  (Id. at 40.)  The grievance was denied at the Second Level and Director's Level for the same

28  reasons (id. at 36, 39), both of which addressed only the October 27, 2005 telephone call,

notwithstanding plaintiff's continuing efforts to challenge all "five" of his identified calls, and his

assertion that the calls were conducted not on "inmate phones," but on "the counselor's phones,"

where confidential calls are allegedly normally made (id. at 41).  The claim was exhausted

pursuant to a Director's Level decision issued April 28, 2006.

2.  Log No. CAL-05-02594

On December 22, 2005, plaintiff submitted Log No. CAL-05-02594, a "staff complaint,"

wherein he asserted that defendant Price, who interviewed plaintiff on December 7, 2005,

pursuant to plaintiff's above-noted grievance (Log No. CAL-05-02249), threatened and

intimidated plaintiff because he had filed the grievance.  Plaintiff described the incident as

follows (Dkt. No. 30 at 51, 57):

> On 12/7/05, Capt. J. Price interviewed me concerning a complaint I
> filed against staff. . . . While trying to explain a remedy to prevent
> such acts from happening in the future, Capt. Price cut me off, and
> proceeded to try and justify the actions of the involved staff.  When
> I tried to point out the futility of his attempts, he became frustrated,
> and told me[,] "I don't have time for this.  I told you guys about
> wasting my time with these 602's.  I have a yard to try to get up and
> running!  You may have one (sic) the last battle, but you won't win
> the next one.  The next time, you'll be the one in the hole!"  When I
> tried to ask him what did he mean, he just stated, "You know what I
> mean. [D]on't play games on my yard!'  I told him, I don't play
> games.  He said, it didn't matter what I said.  He said, "Both green
> and blue told me you were a "troublemaker."  I tried to tell him that
> I haven't caused trouble in the 2½ years I've been on D-Facility.
> He then stated, "Just keep this in the back of your mind, the next
> time I hear you're playing games on my yard, you'll be in the
> hole!"  When I tried to defend myself from these baseless
> allegations, Price began yelling loudly, "You want to go the hole
> now?!  You want to go to the fucking hole right now?!"  I stated, no
> Sir.  He stated, "Then take heed to my words, and get out of my
> office.  I'm busy." [¶]  I left his office, intimidated, wondering why
> he screamed at me that way, and threatened to put me in the hole.  I
> have the specific right not to be treated this way during an interview
> of my appeal.

Pursuant to these allegations, plaintiff requested "an unbiased, independent and thorough

investigation.  I want to be assured in writing that no further reprisals will be taken against me for

exercising my State and Federal Constitutional and Statutory rights to use the appeal system. . . ."

7

1    (Dkt. No. 30 at 51.)

2         The grievance (Log No. CAL-05-02594) was "partially granted" at the First Level, on the

3    ground that an investigation was conducted in response to plaintiff's allegations.  (Id. at 52, 55-

4    56.)  Shortly thereafter, on April 12 or 13, 2006, plaintiff was transferred to Mule Creek State

5    Prison.  Nevertheless, plaintiff sought and obtained a Second Level review, which was also

6    "partially granted" due to an investigation having been conducted.[3]  (Id. at 52-54.)  The Director's

7    Level decision was issued September 27, 2006, denying plaintiff's grievance.  (Id. at 50.)

8         D.  Claims Presently at Issue

9         The following First Amendment retaliation claims were previously dismissed and are now

10   before the court for reconsideration:[4]

11              1. That, on November 28, 2005, defendants Price and Chavarria
              allegedly retaliated against plaintiff for filing his November 9, 2005
12            grievance (Log No. CAL-05-02249), by conspiring to place an
              inmate, who had previously been administratively segregated for
13            conspiring to assault plaintiff, back into plaintiff's facility; that
              defendants Price and Chavarria "knew or should have known that
14            placing that inmate back on the facility would result in Plaintiff
              being assaulted and placed in segregation."  (Cmplt. ¶¶ 22-26.)
15
16              2. That, on March 21, 2006, and March 30, 2006, defendants Rush
              and Chavarria allegedly retaliated against plaintiff for filing his
17
    _____
18   [3]  Plaintiff has submitted another copy of this Second Level decision, dated June 15, 2006 (ECF
     No. 44 at 24-6 (Exh. B)), because it was not included in defendants' original exhibits to their
19   motion to dismiss.  (See ECF No. 44 at 3-4 n.1 and related text.)  However, the court previously
     considered this exhibit, submitted by plaintiff in his original opposition to the motion to dismiss
20   (ECF No. 30 at 52-4), as noted in the court's prior findings and recommendations (ECF No. 34 at
     8).
21
22   [4]  The following First Amendment retaliation claims remain in this action pursuant to the court's
     prior finding that they were administratively exhausted (ECF No. 34 at 8-9):

23              1. That, on September 13, 2005, October 26, 2005, October 27,
              2005, and October 28, 2005, defendants Ryan, Nunez, Chavarria,
24            Anaya and Rush allegedly interfered with plaintiff's right to make
              confidential attorney calls, in retaliation for plaintiff pursuing a
25            separate civil rights action, Walker v. Gomez, et al., Case No.
              03:96-cv-0609 PCL.
26
              2. That, on December 7, 2005, defendant Price allegedly harassed
27            plaintiff and threatened to place him in administrative segregation,
              in retaliation for plaintiff filing an administrative grievance
28            challenging the denial of confidential attorney calls.

                                          8

1   November 9, 2005 grievance (Log No. CAL-05-02249), by
    ordering another correctional officer (Partida) to handcuff plaintiff
2   during his telephone calls with his attorney. (Cmplt. ¶¶ 31-33.)

3   (ECF No. 34 at 9-10 (paraphrasing the original complaint (Cmplt.) at ¶¶ 22-6; 31-3).) The parties

4   have characterized these claims, respectively, as plaintiff's "inmate-enemy retaliation claim," and

5   "retaliatory handcuffing claim," which the court adopts herein.

6       E.  Analysis

7           1. Retaliatory Handcuffing Claim

8           Plaintiff has offered no new evidence or argument in support of his retaliatory handcuffing

9   claim. As the court previously found, neither of plaintiff's exhausted appeals expressly

10  referenced this claim. (ECF No. 34 at 10 n.10 ("There is no allegation of handcuffing in either of

11  plaintiff's exhausted grievances.").) Moreover, as defendants correctly note, neither appeal can

12  reasonably be construed to include the claim. Because the alleged handcuffing incidents occurred

13  in retaliation for plaintiff filing Appeal Log No. CAL-05-02249, that appeal allegedly triggered

14  the retaliation; it cannot, therefore, be construed to exhaust the claim. Further, because Appeal

15  Log No. CAL-05-02594 was filed on December 22, 2005, prior to the alleged handcuffing

16  incidents of March 21 and 30, 2006, that appeal cannot reasonably be construed to contain or

17  exhaust claims premised on those incidents. Moreover, as the court previously found, "plaintiff

18  had ample opportunity to report the alleged handcuffing pursuant to his second administrative

19  grievance. Plaintiff's requests for Second Level, and Director's Level Reviews (made in May

20  2006, and June 2006, respectively) made no reference to plaintiff's allegations of handcuffing in

21  March 2006. While prison officials were no longer in a position to resolve the matter, due to

22  plaintiff's transfer, the alleged significance of the challenged conduct was sufficiently important

23  to the merits of plaintiff's second grievance that it should have been mentioned." (ECF No. 34 at

24  10 n.10 (internal citations omitted).)

25          For these reasons, the undersigned again recommends the dismissal of plaintiff's

26  retaliatory handcuffing claim for failure to exhaust administrative remedies.

27  ////

28  ////

9

2.   Inmate-Enemy Retaliation Claim

Liberally construing this claim, plaintiff alleges that, on November 28, 2005, defendants Price and Chavarria retaliated against plaintiff, for filing his November 9, 2005 grievance (Log No. CAL-05-02249), by threatening to return an inmate, previously placed in administrative segregation for threatening to assault plaintiff, back into plaintiff's facility.  (Cmplt. ¶¶ 22-26.) Plaintiff does not identify the subject inmate or state whether he was released from administrative segregation or returned to plaintiff's facility.

Plaintiff does not contest the court's prior assessment that this claim was not expressly included in either of his administrative appeals.  The undersigned previously found that, "[g]iven the allegedly alarming nature of these allegations, and the clear and readily available solution of denying or overturning the placement, plaintiff had an affirmative obligation to raise the matter before prison officials.  This is the type of grievance for which prison officials must be "put on notice" in order to "facilitate its resolution."  Griffin, 557 F.3d at 1120.

Plaintiff has now submitted a declaration asserting that the following demonstrates the unavailability of administrative remedies.  (See ECF No. 44 at 3-5; id. at 16-20 (Pltf. Decl.).) Plaintiff avers, under penalty of perjury, the following facts and opinions, as summarized by the court (ECF No. 44 at 16-20 (Pltf. Decl.)):

> 1.  On November 26, 2005 (following the September and October 2005 incidents when defendants Ryan, Nunez, Chavarria, Anaya and Rush allegedly interfered with plaintiff's right to make confidential attorney calls, in retaliation for plaintiff pursuing a separate civil rights action), and unbeknownst to plaintiff, Calipatria Lieutenant J.J. Santana commenced an investigation to determine whether a "particular inmate" was intending to assault plaintiff.  At the conclusion of this investigation, Lt. Santana placed the inmate in administrative segregation.
>
> 2.  On November 28, 2005, Calipatria Correctional Officer Dominquez came to plaintiff and asked him to sign a document which stated that plaintiff did not consider the subject inmate his enemy; plaintiff refused to sign, and Dominquez left.
>
> 3.  Approximately ten minutes later, plaintiff was escorted to the office of defendant Chavarria, who asked plaintiff why he refused to sign the document; plaintiff explained that he had been informed that the subject inmate planned to assault him.

////

4.  Defendant Price entered defendant Chavarria's office, and stated that the subject inmate had informed Price that plaintiff was a "troublemaker."

5.  When plaintiff expressed fear and anxiety about the possibility of the subject inmate being placed back on the facility, defendant Price replied, "Calm down.  Relax.  Remember, he's in the hole. You're not."

6.  When plaintiff returned to his housing unit, he wrote letters to his attorney and to Calipatria Acting Warden G. Giurbino, "in an attempt to try and protect himself" from what looked like Price and Chavarria trying to set him up to be assaulted.  Plaintiff sent both letters to his attorney, and asked that the letter addressed to Giurbino be forwarded.  While plaintiff's attorney told plaintiff he forwarded the letter to Giurbino, but the warden never responded. Plaintiff opines that Giurbino received plaintiff's letter and informed defendant Price of its contents.

7.  Nine days later, on December 7, 2005, plaintiff was interviewed by defendant Price concerning plaintiff's administrative appeal alleging the denial of confidential attorney calls (Log No. CAL-05-02249).  It is at this time that Price allegedly shouted at plaintiff as follows:  "You may have won the last battle, but you won't win the next one. . . . The next time, you'll be the one in the hole."

8.  Plaintiff states that he did not initially understand what Price meant "because the stated threat was not in context with what was being discussed during the interview."  However, upon reflection, plaintiff concluded that the threat "could only be a reference to the inmate he and Chavarria wanted plaintiff 'to bail out of segregation' by signing the document  prepared by Chavarria, Price, or both, which indicated that plaintiff didn't consider the inmate" to be a threat.  Plaintiff hypothesizes that Price was upset because Giurbino talked with him, "thereby thwarting Price's and Chavarria's plans to place the inmate back on the facility with plaintiff."

9.  Thereafter, on February 10, 2006, Calipatria Associate Warden G.J. Janda conducted the Second Level interview of plaintiff's grievance alleging retaliatory conduct by Price (Log No. CAL-05-02594). When Janda asked plaintiff whether he had any other information he wanted to add, plaintiff told Janda about the preceding matters, including plaintiff's fear that defendants Price and Chavarria would also retaliate against plaintiff by placing the subject inmate back on the facility with plaintiff.  Plaintiff states that Janda took notes and informed plaintiff that a written response would be sent to plaintiff informing him of the results of the investigation. Plaintiff states that he was "left . . . with the impression that information he shared with Janda would be addressed."

10.  However, in Janda's Second Level decision, issued June 29, 2006 (see n.3, supra), he did not mention plaintiff's inmate-enemy retaliation claim.  Janda provided a general explanation that the

1

"new issues" raised by plaintiff were not addressed because outside
the scope of the "initial problem and requested action."

2

3      Plaintiff contends that these "'new issues' were not 'new,'" because his allegations of

4   retaliation by Price and Chavarria in November 2005 were directly relevant to plaintiff's

5   allegations of retaliation by Price in December 2005, then under review by Jandad.  (ECF No. 44

6   at 19-20.)  Plaintiff asserts that Janda never indicated that his inmate-retaliation allegations were

7   not relevant to the pending claim, or that plaintiff needed to raise this matter in a separate

8   administrative appeal.  Plaintiff alleges that Janda's investigation was biased, and opines that

9   "[i]n retrospect, it was perhaps unreasonable for plaintiff to expect Janda to be an unbiased

10  investigator, since plaintiff was in the midst of settling a civil rights action in Walker v. Gomez [],

11  wherein Janda had been a key defendant."[5]  (Id. at 20.)

12     Plaintiff relies on case law holding that a prisoner need only exhaust his available

13  administrative remedies.  As earlier noted, a prisoner need not attempt to exhaust a claim for

14  which "all 'available' remedies at an intermediate level of review" have been obtained, or for

15  which the prisoner was "reliably informed by an administrator that no remedies are available."

16  Brown v. Yaloff, supra, 422 F.3d at 935; accord, Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir.

17  2010) (plaintiff's failure to timely exhaust his administrative remedies was excused because he

18  took reasonable and appropriate steps to exhaust his claim but was precluded from doing so by

19  the mistake of a prison official); Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010) (improper

20  screening of a grievance renders administrative remedies effectively unavailable, e.g., if "prison

21  officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the

22  necessary sequence of appeals, and administrative remedies are therefore plainly unavailable").

23     Plaintiff asserts that Price's threats made on December 7, 2005, in tandem with the

24  statements made by Price and Chavarria on November 28, 2005, "'chill[ed]' plaintiff's ability to

25  pursue a separate grievance" due to his fear that these defendants would further retaliate against

26  plaintiff by releasing the subject inmate.  (ECF No. 44 at 10.)  This allegation satisfies the

27

28

[5] Review of the docket in Walker v. Gomez et al., Case No. 03:96-cv-0609 PCL (S.D. Cal.),
confirms that G.J. Janda was a defendant in that action.

1  requirement that a First Amendment retaliation claim include an allegation that the official's

2  adverse action "chilled" the prisoner's further exercise of his First Amendment rights.  See

3  Rhodes v. Robinson, supra, 408 F.3d at 568-69.  Taken in the light most favorable to plaintiff, his

4  allegations are plausible, and supported by the legal citation.

5         Plaintiff further contends that these alleged circumstances satisfy the conditions for

6  finding administrative remedies unavailable, as set forth by the Eleventh Circuit in Turner v.

7  Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008) (cited with approval in both Nunez, 591 F.3d at

8  1224; and Sapp, 623 F.3d at 823):

9
10
11
12
13
14
> We conclude that a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met:  (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

15         Defendants have not responded to this argument, as they did not file a response to

16  plaintiff's supplemental opposition.  In their supplemental motion, defendants argue only that

17  plaintiff's inmate-enemy retaliation claim was not expressly or implicitly stated in either of his

18  appeals.

19         The Second Level decision written by Calipatria Associate Warden G.J. Janda, in

20  plaintiff's Appeal Log No. CAL-05-02594 (wherein Janda declined to address plaintiff's "new

21  issues"), is consistent with plaintiff's assertion that he explained to Janda the premise of his

22  inmate-enemy retaliation claim against Price and Chavarria, and reasonably believed that the

23  matter would be investigated, together with plaintiff's pending retaliation claim against Price.

24  Additionally, there is nothing in the record to contradict plaintiff's allegation that Price's threats

25  made on December 7, 2005, in tandem with the statements made by Price and Chavarria on

26  November 28, 2005, "'chill[ed] plaintiff's ability to pursue a separate grievance" on his inmate-

27  enemy retaliation claim, thus meeting the first of the Turner conditions for demonstrating the

28  unavailability of an administrative remedy.  Turner v. Burnside, 541 F.3d at 1085.  Significantly,

13

1   "[t]he mere threat of harm can be an adverse action, regardless of whether it is carried out

2   because the <u>threat</u> <u>itself</u> can have a chilling effect." <u>Brodheim v. Cry,</u> 584 F.3d at1270 (original

3   emphasis).  Moreover, it is reasonable to conclude that plaintiff's allegations meet the second

4   <u>Turner</u> condition, that the perceived threat by Price and Chavarria was "one that would deter a

5   reasonable inmate of ordinary firmness and fortitude from lodging a [new] grievance . . . ."

6   <u>Turner v. Burnside,</u> 541 F.3d at 1085.

7        For these reasons, the undersigned finds that plaintiff exhausted those administrative

8   remedies that were available to him on his inmate-enemy retaliation claim against defendants

9   Price and Chavarria.  For these reasons, the undersigned recommends that defendants' motion to

10  dismiss this claim should be denied.

11  IV.  <u>Plaintiff's Request to Reinstate Dismissed State Law Claims</u>

12        In addition to opposing the dismissal of his First Amendment claims, plaintiff requests

13  that the court reconsider its dismissal of plaintiff's state law claims.  (<u>See</u> ECF No. 44 at 11-4; <u>id.</u>

14  at 15-6 (Pltf. Decl.); and <u>id.</u> at 22-3 (Exh. A).)  These claims were not re-opened by the court and

15  defendants have not responded to plaintiff's request.  Nevertheless, the undersigned briefly

16  addresses plaintiff's request, to demonstrate why his state law claims were properly dismissed,

17  and should remain so.[6]  <u>See</u> <u>Thomas v. Bible,</u> 983 F.2d 152, 155 (9th Cir. 1993) (applying law of

18  the case doctrine).[7]

19  ////

---

[6] The court previously considered and rejected plaintiff's arguments that he reasonably believed he was required to exhaust his administrative remedies before filing his state tort claim; that the limitations period for filing his state tort claim was tolled pending the exhaustion of his administrative remedies; that the Board's allegedly belated notification that plaintiff's application to file a late claim had been rejected constitutes a waiver of defendants' untimeliness defense; and that it is within this court's discretion to consider plaintiff's state tort claims, notwithstanding plaintiff's failure to meet the pertinent state filing requirements.  (<u>See</u> ECF No. 34 at 10-7.)

[7] A court may reopen a previously resolved question if one or more of the following circumstances are present:  "(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different;  (4) other changed circumstances exist; [or] (5) a manifest injustice would otherwise result."  <u>Thomas v. Bible,</u> <u>supra</u>, 983 F.2d at 155 (applying preclusive doctrine of law of the case).  None of these circumstances are present here.

1    The court dismissed plaintiff's state law claims due to plaintiff's failure to comply with

2    the California Tort Claims Act.  (See ECF No. 34 at 10-7; ECF No. 35 at 2.)  Plaintiff continues

3    to concede that his only relevant state tort claim was untimely filed and that, after the denial of

4    plaintiff's request to file a late claim with the California Victim Compensation and Government

5    Claims Board (VCGCB or Board), plaintiff failed to pursue his only remedy, a judicial petition

6    for relief from the claim presentation requirement.

7         Plaintiff again asserts that he should be excused from meeting the claim presentation

8    requirements due to his allegedly reasonable belief that he was required to first exhaust his

9    administrative remedies.  Plaintiff submits the following new exhibits in support of this argument:

10   (1) a letter, dated May 22, 1996, addressed to plaintiff, from the Government Claims Division of

11   the California State Board of Control (predecessor to the VCGCB), responsive to (2) plaintiff's

12   March 9, 1996 letter to the Board, which sought advice regarding the procedure for filing a tort

13   claim when corrections staff "refused to process" plaintiff's administrative appeal.  (ECF No. 44

14   at 22-3 (Exh. A).)  The responsive letter informed plaintiff that the Board was precluded from

15   acting on plaintiff's claim "until you have exhausted your administrative remedies within the

16   Department of Corrections."  (Id. at 22.)  Plaintiff asserts that he "reasonably believed" that this

17   1996 letter reflected "the Board's last official policy statement" (ECF No. 44 at 16 (Pltf. Decl.)),

18   and "is the direct and sole cause why [plaintiff] exhausted his administrative remedies before

19   filing his claim with the Board" in the instant case (ECF No. 44 at 11).

20        The California Government Tort Claims Act (Act) requires that a state tort claim against a

21   public entity or its employees be presented to the Board within six months after the cause of

22   action accrued.  Cal. Govt. Code §§ 905.2, 910, 911.2, 945.4, 950-950.2.  Timely presentation of

23   a claim, and the Board's subsequent denial, are conditions precedent to bringing suit in a state or

24   federal court on the claim.  State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234,

25   1240, (2004); Shirk v. Vista Unified School District, 42 Cal.4th 201, 209 (2007).  Compliance

26   with the Act is an element of the cause of action, Bodde, 32 Cal.4th at 1240, and therefore,

27   "failure to file a claim is fatal to [the] cause of action," Hacienda La Puente Unified School Dist.

28   of Los Angeles v. Honig, 976 F.2d 487, 495 (9th Cir.1992); City of San Jose v. Superior Court,

1   12 Cal.3d 447, 454 (1974).  "California statutes or ordinances which condition the right to sue the

2   sovereign upon timely filing of claims and actions are ... elements of the plaintiff's cause of

3   action and conditions precedent to the maintenance of the action."  Bodde, 32 Cal.4th at 1240

4   (quoting Williams v. Horvath, 16 Cal.3d 834, 840 (1976) (further internal citation omitted)

5   (emphasis deleted).

6          Plaintiff's cause of action accrued on October 28, 2005; therefore, the deadline for filing a

7   state tort claim was six months later, or by April 28, 2006.  Plaintiff exhausted his administrative

8   remedies on April 28, 2006.  On July 3, 2006, plaintiff submitted an application to file a late

9   claim.  (See ECF No. 34 at 12-4 (citations to record omitted).)  The Board informed plaintiff, on

10  November 20, 2006, that it had referred his application to the "affected State agencies for review

11  and recommendation."  (Id.)  On December 27, 2006, the Board informed plaintiff that it intended

12  to deny his application on February 22, 2007, which it did.  (Id.)  Plaintiff was expressly informed

13  that his only recourse was to petition a court for relief from the claim presentation requirement.

14  (See ECF No. 22-4 at 6 ("Your next recourse, should you wish to pursue the matter further, will

15  be to file a petition in court for relief from the requirements of Government Code Section 945.5.

16  You will have six months from the date of the denial to file a petition.").)  However, plaintiff did

17  not pursue this remaining option; rather, plaintiff's first request for judicial relief from the

18  Board's denial of his application to file a late claim was set forth in plaintiff's initial opposition to

19  defendants' motion to dismiss the instant federal action, submitted to this court on October 3,

20  2011.  Plaintiff now contends that, because he "relied to his detriment on this [1996] letter . . . [,]

21  he is entitled to the benefit of equitable estoppel."  (ECF No. 44 at 11-4.)

22          Plaintiff previously presented this argument, which the court rejected.  The court reasoned

23  in part (ECF No. 34 at 14 (internal citations to docket omitted)):

24              [P]laintiff avers that he reasonably believed that he was required to
                exhaust his administrative remedies before filing his state tort
25              claim.  Plaintiff directs the court's attention to an excerpt from the
                California State Prisoners Handbook [p.681, §15.29, n.283 (4th Ed.
26              2008) (citing undated VCGCB memorandum)], which states in
                pertinent part:
27
28              [I]n 2004, the Government Claims Board began requiring prisoners
                to exhaust the 602 process before filing a Government Claims

                                    16

Form.  [However, problems arose because prisoners' administrative appeals frequently were not fully processed by the time of the six-month deadline for filing a Government Claims Board claim.]  Consequently, the Board rescinded this policy and no longer requires prisoners to complete the 602 process before filing a Board of Control Claim.

The selected passage does not reasonably support plaintiff's construction (unless plaintiff stopped reading after the first sentence).  Moreover, because plaintiff failed to file a judicial petition for relief, he forfeited any alleged excuse premised on the reasons for permitting such relief, including "mistake, inadvertence, surprise or excusable neglect," Cal. Govt. Code § 911.6 (b)(1).  See e.g. Collins v. Los Angeles County, 241 Cal. App. 2d 451, 460 (1966) ("Having failed to rely on these sections to obtain relief by petition to file a late claim, appellants are not now in a position to cite these sections in support of their contentions herein.").

California courts emphasize that a "[p]laintiff's obligation to exhaust the administrative remedies available to prisoners . . . is independent of the obligation to comply with the Government Claims Act."  Parthemore v. Col, 221 Cal. App. 4th 1372, 165 Cal.Rptr.3d 367, 369 (2013) (citing Wright v. State of California, 122 Cal. App. 4th 659, 670-71 (2004); and Lozada v. City and County of San Francisco, 145 Cal. App. 4th 1139, 1155 (2006)).  While the six-month period for filing a court action on a state tort claim, after the Board has acted on the claim, may be tolled during a prisoner's exhaustion of administrative remedies, Wright, supra, 122 Cal. App. 4th at 670, such tolling does not apply to the initial filing of the claim.  As the undersigned has previously noted, "[w]hile the district court has discretion to exercise jurisdiction over supplemental state law claims, such discretion can only be exercised if the claim is timely brought under California law."  Mitchell v. Schwarzenegger, 2011 WL 4928625 at *4-5 (E.D. Cal. 2011); accord Jones v. Plessas, 2011 WL 5593038, at *8-9 (E.D. Cal. 2011) (limitations period for filing claim not tolled by provisions in Tort Claims Act) (citing Emmert v. County of Sonoma, 836 F. Supp. 715, 716 (N.D. Cal. 1993)); see also Cal. Govt. Code § 945.6(c) ("A person sentenced to imprisonment in a state prison may not commence a suit on a cause of action described in subdivision (a) unless he presented a claim in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division.").

For these reasons, the undersigned finds no basis for the court's reconsideration of its dismissal of plaintiff's state law claims.

17

V. Further Proceedings

Should the district judge adopt these supplemental findings and recommendations, this action should proceed on plaintiff's First Amended Complaint, filed April 24, 2012 (ECF No. 36), OR, if plaintiff chooses, a newly-prepared Second Amended Complaint.  As previously found by the undersigned, in response to defendants' request that the court screen plaintiff's amended complaint pursuant to 28 U.S.C. § 1915A (see Dkt. No. 37), the First Amended Complaint "generally conform[ed] to the parameters set forth in this court's findings and recommendations filed February 22, 2012, as adopted by the district judge on March 22, 2012. (Dkt. Nos. 34, 35.)."  (ECF No. 38 at 1.)  The court therefore directed defendants to timely file a responsive pleading.  (Id.)

However, plaintiff's claims have now been further refined, and the First Amended Complaint was filed nearly two years ago.  It is reasonable to accord plaintiff the option of proceeding on his First Amended Complaint, or a newly-filed Second Amended Complaint that conforms to the same length and content parameters.[8]  This option should apply if the district judge adopts these supplemental findings and recommendations.

VI.  Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion to dismiss (ECF Nos. 22, 43) plaintiff's two re-opened First Amendment retaliation claims should be granted in part, and denied in part, as follows:

a.  Plaintiff's "retaliatory handcuffing claim" should be dismissed.

b.  Plaintiff's "inmate-enemy retaliation claim" should proceed in this action, against defendants Price and Chavarria, together with the other claims previously found potentially cognizable in this action (see findings and recommendations filed March 22, 2012 (ECF No. 35)).

2.  Plaintiff's request to reinstate his state law claims should be denied.

////

---

[8] As previously narrowed by the court, any amended complaint should not exceed twenty (2) pages, typed and double-spaced, and should be limited to plaintiff's federal damages claims, pursuant to 42 U.S.C. §1983, against defendants Ryan, Bourland, Nunez, Chavarria, Anaya, Rush, and Price.

18

1        3.  Should the district judge adopt these supplemental findings and recommendations,

2  plaintiff should be accorded the option of proceeding on his First Amended Complaint, or a

3  newly-filed Second Amended Complaint, consistent with the parameters set forth above; plaintiff

4  should be required, within thirty (30) days, to either inform the court that he intends to proceed on

5  his First Amended Complaint, or shall file and serve a Second Amended Complaint.

6        These supplemental findings and recommendations are submitted to the United States

7  District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

8  fourteen days after being served with these findings and recommendations, any party may file

9  written objections with the court and serve a copy on all parties.  Such a document should be

10  captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to

11  the objections shall be filed and served within fourteen days after service of the objections.  The

12  parties are advised that failure to file objections within the specified time may waive the right to

13  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

14  Dated:  January 21, 2014

15

16  /walk0569.mtd.2

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

19