UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

K. JAMEL WALKER,

        Plaintiff,

v.

CALIFORNIA DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.

No.  2:09-cv-0569 WBS KJN P

ORDER AND FINDINGS AND
RECOMMENDATIONS

I.  Introduction

     Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment. (ECF No. 60.)  Also pending is plaintiff's motion to strike defendants' declarations.  (ECF No. 74.)  For the reasons stated herein, plaintiff's motion to strike is denied, and the undersigned recommends that defendants' summary judgment motion be granted.

II.  Legal Standard for Summary Judgment

     Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

(9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

255.  All reasonable inferences that may be drawn from the facts placed before the court must be

drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

are not drawn out of the air, and it is the opposing party's obligation to produce a factual

predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

demonstrate a genuine issue, the opposing party "must do more than simply show that there is

some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on September 14, 2012 (ECF No. 38), plaintiff was

advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

////

3

III.  Summary of Plaintiff's Claims

     A.  Plaintiff's Allegations

     This action proceeds on the second amended complaint filed February 20, 2014, against defendants Ryan, Bourland, Nunez, Chavarria, Price, Rush, and Anaya.  (ECF No 46.)

     Plaintiff alleges that in 2005, defendants denied requests by the attorney representing plaintiff in a civil matter to have confidential phone calls with plaintiff.  Instead, plaintiff's phone calls with his attorneys were monitored by defendants.  (Id. at 2-6.)

     Plaintiff alleges that on August 17, 2005, his attorney sent a letter, via fax and mail, to defendant Nunez or non-defendant Moreno, informing them that plaintiff had to appear at a telephonic settlement conference on September 21, 2005, at 1:30 p.m.  (Id. at 4-5.)  On September 21, 2005, plaintiff appeared at the telephonic settlement conference.  (Id. at 5.)  Plaintiff alleges that defendants Rush and Anaya monitored the phone call, despite knowing the "confidential nature" of the settlement conference.  (Id.)

     Plaintiff alleges that on September 8, 2005, his attorney sent a letter, via fax and mail, to defendant Nunez or non-defendant Moreno, requesting permission to conduct a conference call with plaintiff on September 12, 2005, September 13, 2005, or September 14, 2005, to discuss Early Neutral Evaluation ("ENE").  (Id.)

     On September 13, 2005, plaintiff received a message to report to the office of defendants Rush and Anaya to receive the preapproved conference call with his attorney.  (Id.)  Plaintiff alleges that defendants Rush and Anaya monitored this call.  (Id.)

     Plaintiff alleges that on October 12, 2005, his attorney sent a letter, via fax and mail, to defendant Nunez or non-defendant Moreno, informing them that the September 21, 2005 settlement conference had been continued to October 27, 2005, and that plaintiff was to appear by telephone.  (Id.)

     On October 20, 2005, plaintiff's counsel sent a letter, via fax or mail, to defendant Nunez or non-defendant Moreno, asking to speak with plaintiff on October 26, 2005.  (Id.)  On October 26, 2005, plaintiff was told to report to the office of defendants Rush and Anaya to receive a call from his attorney.  (Id.)  Defendants Rush and Anaya monitored this call.  (Id.)

4

On October 27, 2005, plaintiff reported to the office of defendants Rush and Anaya to telephonically attend the settlement conference. (Id. at 6.) At the conclusion of the call, plaintiff asked the judge if he could talk with his attorney before the call was terminated. (Id.) The judge granted this request. (Id.) The judge and opposing counsel hung up, and plaintiff began speaking to his counsel. (Id.) Ten minutes later, defendant Rush ordered plaintiff to hang up. (Id.) Defendant Rush told plaintiff that the call was not authorized. (Id.)

On October 28, 2005, plaintiff's counsel called back. (Id.) Defendant Anaya summoned plaintiff to his office. (Id.) Plaintiff stepped out of the office with the phone. (Id.) Defendant Anaya told plaintiff that he had been given instructions to have plaintiff sit in the office so the call could be monitored, or plaintiff could hang up and have his attorney visit him. (Id.) Plaintiff hung up the phone. (Id.)

Plaintiff alleges that later that day, defendant Anaya issued a 128-B Chrono to him for violating prison rules by leaving the office. (Id. at 6-7.)

Plaintiff alleges that four days after receiving the 128-B chrono, his attorney informed him that their phone calls would be limited to fifteen minutes, instead of the previous thirty minutes. (Id. at 7.) Plaintiff alleges that the fifteen minute time limit was imposed by defendants in retaliation for him attempting to have a confidential phone call with his attorney on October 28, 2005. (Id.) Plaintiff alleges that the fifteen limit time limit was also imposed to retaliate against him for engaging in litigation. (Id.)

Plaintiff alleges that on November 26, 2005, Lieutenant Santana began investigating claims that an inmate was planning to assault plaintiff. (Id. at 9.) Lieutenant Santana placed the inmate who planned to assault plaintiff into segregation. (Id.) Plaintiff alleges that on November 28, 2005, defendants Price and Chavarria entered into a conspiracy to have the inmate who planned to assault plaintiff moved back to plaintiff's unit. (Id.) Plaintiff alleges that defendants Price and Chavarria "knew or should have known" that this inmate was a threat to plaintiff. (Id.) Plaintiff alleges that on November 28, 2005, Officer Dominguez asked plaintiff to sign a document stating that he did not consider this inmate to be a threat. (Id.) Plaintiff refused to sign this document. (Id. at 9-10.)

Ten minutes after plaintiff refused to sign the document presented to him by Officer Dominguez, plaintiff was escorted to defendant Chavarria's office. (Id. at 10.) Defendant Chavarria asked plaintiff why he refused to sign the document. (Id.) Plaintiff stated that he had been informed that the inmate placed in segregation planned to assault him. (Id.) Defendant Price entered the office and stated that the inmate had informed him that plaintiff was a trouble maker. (Id.)

Plaintiff then returned to his housing unit where he wrote letters to his attorney and acting Warden Giurbino informing them that defendants Price and Chavarria were trying to set him up to be assaulted. (Id.) Plaintiff alleges his letter to Warden Giurbino was successful because the inmate was not "bailed out of segregation." (Id. at 12.)

Plaintiff alleges that on November 30, 2005, he made a telephonic appearance at a confidential settlement conference. (Id.) Plaintiff alleges that defendant Anaya stayed in the office during the entire phone call. (Id.)

Plaintiff alleges that on December 7, 2005, he was summoned to defendant Price's office. (Id. at 11.) Defendant Price told plaintiff that he was investigating a grievance plaintiff filed alleging that defendants Rush and Anaya had eavesdropped on his calls with his attorney. (Id.) Defendant Price became angry when plaintiff began talking. (Id.) Defendant Price told plaintiff,

> I don't have time for this! This is a waste of my time! You may have won the last battle, but you won't win the next one! You know what I mean! Don't play games on my yard! Both green and blue say you are a troublemaker! Just keep this in the back of your mind; the next time I hear you're playing games on my yard, you'll be in the hole! You want to be in the hole now? You want to go to the fucking hole now?

(Id.)

B. Plaintiff's Legal Claims

In claim one, plaintiff alleges retaliation by defendants Price, Chavarria and Anaya. (Id. at 15.) In particular, plaintiff alleges that on December 7, 2005, defendant Price threatened to put plaintiff in ad seg in retaliation for his filing of the grievance challenging the denial of confidential phone calls. (Id.) Plaintiff also alleges that defendants Price and Chavarria retaliated against him for his legal activities when they tried to force plaintiff to sign a document saying that

6

the inmate who planned to assault him was no longer his enemy. (Id.) Plaintiff also alleges that on October 28, 2005, defendant Anaya retaliated against him for attempting to exercise his right to confidential contact with his counsel by leaving the counselor's office, by placing the 128-B chrono in his file and limiting his attorney phone calls to fifteen minutes. (Id.)

In claim two, plaintiff alleges that defendants Ryan, Bourland, Nunez, Chavarria, Rush and Anaya violated his Fourth Amendment rights to confidentially communicate with his lawyer. (Id. at 16.)

In claim three, plaintiff alleges that defendants Ryan, Bourland, Nunez, Chavarria, Price, Rush and Ayana violated his Fourteenth Amendment rights by failing to follow California Penal Code § 636, which establishes his right to privately communicate with his lawyers. (Id.)

In claim four, plaintiff alleges that defendants Ryan, Bourland, Nunez, Chavarria, Price, Rush and Anaya conspired to retaliate against him for his legal activities by interfering with his right to have confidential communications with his lawyer. (Id. at 17-18.)

In claim five, plaintiff alleges that his rights were violated as a result of the failure of defendants Ryan, Bourland, Price, Nunez and Chavarria to train their employees. (Id. at 18.)

IV. Pleading Clarification

Plaintiff has attached two identical declarations to his opposition, i.e., ECF Nos. 73-1 and 73-2. The exhibits attached to the declarations are also identical. The only difference between the two declarations is that the declaration filed as ECF No. 73-2 includes two copies of plaintiff's declaration. (See ECF No. 73-2 at 9-16.) Accordingly, in these findings and recommendations the undersigned refers only to plaintiff's declaration, and attached exhibits, filed as ECF No. 73-1.

In support of their summary judgment motion, defendants filed the declaration of defendant Nunez. (ECF No. 60-7.) In this declaration, defendant Nunez referenced Exhibits A and B attached to the declaration, i.e., the 2004 and 2006 edition of Cal. Code Regs. tit. 15, § 3282. (Id. at 2.) However, these exhibits were not attached to this declaration. On November 27, 2017, defendants filed the declaration of defendant Nunez containing these exhibits. (ECF No. 80.)

On November 30, 2017, the undersigned issued an order finding that the declarations of defendant Nunez and Anaya, filed in support of the summary judgment motion, were not properly dated. (ECF No. 83.) Defendants were granted fourteen days to file properly dated declarations by defendants Nunez and Anaya. (Id.) On December 12, 2017, properly dated declarations by defendants Nunez and Anaya were filed. (ECF Nos. 84, 85.)

V. Undisputed Facts

   A. Undisputed Facts Regarding Parties

   The events alleged in the second amended complaint took place at Calipatria State Prison ("CSP"). (ECF No. 60-4 at 1; ECF No. 73-4 at 1.) Defendant Ryan was the Warden of CSP at all relevant times. (ECF No. 60-4 at 2; ECF No. 73-4 at 2.) Defendant Bourland was the Chief Deputy Warden at CSP at all relevant times. (ECF No. 60-4 at 2; ECF No. 73-4 at 2.) Defendant Nunez was the Litigation Coordinator at CSP at all relevant times. (ECF No. 60-4 at 2; ECF No. 73-4 at 2.) Defendant Chavarria was a Correctional Counselor at all relevant times. (ECF No. 60-4; ECF No. 73-4 at 2.) Defendant Price was a Correctional Captain at all relevant times. (ECF No. 60-4; ECF No. 73-4 at 2.) Defendant Price is deceased. (ECF No. 60-4 at 2; ECF No. 73-4 at 2.) Defendant Rush was a Correctional Counselor at all relevant times. (ECF No. 60-4 at 2; ECF No. 73-4 at 2.) Defendant Anaya was a Correctional Counselor at all relevant times. (ECF No. 60-4 at 2; ECF No. 73-4 at 2.)

   B. Undisputed Facts Regarding Policies re: Confidential Communication Between Inmates and Attorneys

   *Undisputed Facts*

   As Litigation Coordinator, defendant Nunez was designated by the Warden to set up confidential inmate-attorney phone calls as well as non-confidential calls, such as between an inmate and the court, or an inmate and his attorney.[1] (ECF No. 60-4 at 3; ECF No. 85 at 1-2

---

[1] Plaintiff disputes that defendant Nunez set up the confidential phone calls. (ECF No. 73-3 at 1.) Plaintiff claims that every request by plaintiff's attorney to speak with plaintiff was approved by defendant Ryan, via defendant Nunez, via Nunez's subordinate Irma Moreno. (ECF No. 73-1 at 3; ECF No. 73-2 at 3.) However, plaintiff cites no evidence in support of his claim that Irma Moreno ultimately approved requests by plaintiff's attorney to communicate with him.

8

(Anaya declaration); ECF No. 84 at 1-2 (Nunez declaration).

Prison regulations, set forth in Cal. Code Regs. tit. 15, § 3282 (a)(2), define a "confidential call" as a telephone call between an inmate and his/her attorney, which both parties intend to be private. (ECF No. 60-4 at 3; ECF No. 73-4 at 3; ECF No. 84 at 2 (Nunez declaration).) A non-confidential inmate-attorney call is where one party does not intend the call to be private. (ECF No. 60-4 at 3; ECF No. 84 at 2. (Nunez declaration).) A confidential inmate-attorney call is handled differently than a non-confidential call between an inmate and his attorney. (ECF No. 60-4 at 3; ECF No. 84 at 2 (Nunez declaration).)

Non-confidential attorney-inmate calls (and telephonic court appearances) are conducted in the Counselor's Office. (ECF No. 60-4 at 3; ECF No. 84 at 2 (Nunez declaration).) During a non-confidential inmate-attorney call, counseling staff will remain in the Counselor's Office during the duration of the phone call for safety and security reasons described herein. (ECF No. 60-4 at 3; ECF No. 84 at 2 (Nunez declaration).)

The Counselor's Office contains a phone, a computer, files containing confidential inmate information, and office supplies that inmates could use to make weapons. (ECF No. 60-4 at 2; ECF No. 84 at 2 (Nunez declaration).) The Correctional Counselor's presence prevents the inmate from stealing items that can be used to make weapons; taking or reading other inmates' files to gain information they can use against them or sell; gaining unauthorized access to the computer; or using the phone to conduct unauthorized calls. (ECF No. 60-4 at 3; ECF No. 84 at 2 (Nunez declaration).)

Non-confidential calls are limited to thirty minutes. (ECF No. 60-4 at 3; ECF No. 84 at 2 (Nunez declaration).)

Under California Code of Regulations, Title 15, Section 3282(g)(1), confidential inmate-attorney calls may be approved on a case-by-case basis by the institutional head or designee only upon written request from an inmate's attorney on the attorney's office letterhead stationary. (ECF No. 60-4 at 3; ECF No. 84 at 3 (Nunez declaration).) The date, time, duration and place where the inmate will make or receive the call, and manner of the call are within the discretion of the institution head. (ECF No. 60-4 at 4; ECF No. 84 at 3 (Nunez declaration).) It is within the

9

discretion of the institution head or designee to approve or deny a confidential call. (ECF no. 60-4 at 4; ECF No. 84 at 3 (Nunez declaration).)

Once approved, confidential inmate-attorney calls are facilitated through the Litigation Coordinator's office, who notifies the counseling staff of the date and time of the call, and the fact that the call is confidential. (ECF No. 60-4 at 4; ECF No. 84 at 3 (Nunez declaration).) During a confidential inmate-attorney call, counseling staff will maintain visual contact of the inmate through the windows into the counseling office throughout the duration of the phone call for the safety and security reasons described above. (ECF No. 60-4 at 4; ECF No. 84 at 3 (Nunez declaration).)

Because staff must remain outside the office during the call, and cannot conduct business, confidential inmate-attorney calls are limited to 15 minutes. (ECF No. 60-4 at 4; ECF No. 84 at 3 (Nunez declaration).)

*Plaintiff's Arguments re: Undisputed Facts*

In his opposition, plaintiff argues that all calls between inmates and their attorneys are confidential, regardless of whether the attorney specifically requests a confidential call. Plaintiff argues that calls between inmates and their attorneys are confidential because they are made on "prison phones" as defined by Cal. Code Regs. tit. 15, § 3282. Section 3282(1)(5) defines a "prison telephone" as "a telephone that is capable of outside access and is not to be monitored." (ECF No. 84 at 7 (Section 3282 attached to Nunez declaration).) In contrast, § 3282(1)(3) defines an "inmate telephone" as "a telephone designated solely to accommodate inmate-originated nonconfidential personal calls." (Id.)

In the reply, defendants correctly observe that which telephone the call is made on is not what defines a confidential call. Instead, under § 3282(a)(2) and (g)(1), the factors that make the call confidential are: 1) preapproval upon written request for confidentiality; and 2) that both parties intend the call to be private. (Id. at 7-8.) Thus, plaintiff's argument that all phone calls between inmates and their attorneys are confidential because they are made on "prison phones" is without merit.

////

Plaintiff argues that Cal. Code of Regs. tit. 15, § 3282 makes no distinction between confidential and non-confidential phone calls, or that there is a 15 to 30 minute difference between them.

In the reply to the opposition, defendants correctly point out that plaintiff's argument that attorney-inmate calls are confidential per se under § 3282 is contracted by §3282(a)(2), which defines a "confidential call" as a "telephone call between an inmate and his/her attorney which both parties intend to be private," and then sets forth the procedures by which attorneys may obtain approval for placing confidential calls. (See Cal. Code Regs. tit. 15 § 3282 (a)(2) and (g)(1) (2004); ECF No. 84 at 7-8 (Nunez declaration).)

Plaintiff also cites California Business and Professions Code § 6068, California Evidence Code § 917, and California State Bar Rules of Professional Conduct Rule 3-100, in support of his claim that non-confidential calls between an inmate and his attorney do not exist. (ECF No. 73-3 at 1.)

California Business and Professions Code § 6068 defines the duties of an attorney. Nothing in this code states, or suggests, that all calls between inmates and their attorneys are confidential per se. California Evidence Code § 917 is titled, "Presumption that certain communications are confidential; privileged character of electronic communications." This code also does not state, or suggest, that all calls between inmates and their attorneys are confidential per se. Finally, Rule 3-100 of the State Bar of California Rules of Professional Conduct addresses what constitutes confidential information between an attorney and client, and discusses attorneys' duties with respect to confidential information. This rule does not state, or suggest, that all calls between inmates and their attorneys are confidential per se.

Plaintiff is correct that § 3282 does not contain a time limitation on confidential calls between inmates and their attorneys. Instead, the 15 minute and 30 minute limit on confidential and non-confidential calls is a CPS policy.[2] (See ECF No. 84 at 2-3 (Nunez declaration).)

_____

[2] The undersigned also observes that in a declaration submitted in response to plaintiff's discovery motion, defendant Nunez stated that, "When I was Litigation Coordinator in 2005, I recall being told by prior Litigation Coordinators that confidential inmate-attorney calls were limited to fifteen minutes. However, I do not recall whether there were any written policies that

11

C.  Undisputed Facts Regarding Counsel's Requests to Communicate with Plaintiff in August 2005 through December 2005

During all relevant times, plaintiff was the plaintiff in a case entitled Walker v. Gomez, No. 3:96-00609 PCL (S.D. Cal. Apr. 5, 1996) ("Walker v. Gomez").  (ECF No. 60-4 at 2; ECF No. 73-4 at 2.)  None of the defendants in the instant case were defendants in Walker v. Gomez. (ECF No. 60-4 at 2; ECF No. 73-4 at 2.)  Thorey Bauer was one of the attorneys in the O'Melveny and Myers law firm that represented plaintiff in Walker v. Gomez.  (ECF No. 60-4 at 2; ECF No. 73-4 at 2.)

Plaintiff was able to communicate with the attorneys representing him in Walker v. Gomez by confidential legal mail which was not read by prison officials.  (ECF No. 60-4 at 2; ECF No. 73-4 at 2.)  Plaintiff was able to communicate with his attorneys by confidential telephone conferences on some occasions.  (ECF No. 60-4 at 2; ECF No. 73-4 at 2.)

Plaintiff has no knowledge of what transpired between prison personnel and his attorneys in setting up his attorney-client phone calls.  (ECF No. 60-4 at 4; ECF No. 73-4 at 4.)

Defendants' counsel (in the instant case) sent plaintiff's lawyers in Walker v. Gomez a subpoena requesting all writings from plaintiff's counsel to the California Department of Corrections ("CDCR") requesting permission for confidential attorney/client telephone calls with plaintiff from August 1, 2005, to April 12, 2006.  (ECF No. 60-6 at 5.)  Defendants' counsel also requested all writings from CDCR to plaintiff's counsel in Walker v. Gomez regarding requests for confidential attorney/client telephone calls from August 1, 2005, to April 12, 2006.  (Id.) Some of the undisputed facts herein are based on the response to this subpoena.  The description of these undisputed facts is somewhat different from the description contained in the parties' pleadings.

Plaintiff's counsel in Walker v. Gomez did not send a letter to CSP officials on or around August 17, 2015, requesting that plaintiff appear at a telephonic status conference on September 21, 2015 (as alleged by plaintiff in the second amended complaint).  (See ECF No. 60-6.)  In

confidential inmate-attorney calls were limited to fifteen minutes."  (ECF No. 70-2 at 2.)

August 2005, plaintiff's counsel sent CSP officials one written request to communicate with plaintiff.  (Id. at 8.)  In this letter, dated August 18, 2005, counsel requested a conference call with plaintiff on August 23, 2005, August 25, 2005, or August 29, 2005.  (Id.)  This letter did not request that the conference call be confidential.  (Id.)

In September 2005, plaintiff's counsel in Walker v. Gomez sent CSP officials one written request to communicate with plaintiff.  (Id. at 9.)  In this letter, dated September 8, 2005, counsel requested a conference call with plaintiff on September 12, 2005, September 13, 2005, or September 14, 2005.  (Id.)  This letter did not request that the conference call be confidential.  (Id.)

In October 2005, plaintiff's counsel in Walker v. Gomez sent CSP officials four written requests to communicate with plaintiff.  In the first letter, dated October 10, 2005, counsel requested a conference call with plaintiff on October 19, 2005, October 20, 2005, or October 21, 2005, to discuss the October 27, 2005 Early Neutral Evaluation ("ENE") Conference in his case.  (Id. at 10.)  This letter did not request that the conference call be confidential.  (Id.)

On October 20, 2005, plaintiff's counsel sent CSP officials a letter requesting that plaintiff be included in the October 27, 2005 ENE conference call.  (Id. at 13.)  Counsel also requested permission to talk to plaintiff on October 26, 2005, prior to the ENE conference call.  (Id.)  This letter did not request that the October 26, 2005 phone call with plaintiff or the October 27, 2005 ENE conference call be confidential.  (Id.)

On October 27, 2005, plaintiff's counsel sent CSP officials a letter requesting permission to talk with plaintiff on October 28, 2005.  (Id. at 14.)  This letter did not request that the call be confidential.  (Id.)

On October 31, 2005, plaintiff's counsel sent CSP officials a letter requesting a "Confidential" conference call with plaintiff on November 2, 2005.  (Id. at 17.)

In November 2005, plaintiff's counsel sent CSP officials one request to communicate with plaintiff.  (Id. at 18.)  In this letter, dated November 15, 2005, counsel requested a "Confidential" conference call with plaintiff on November 21, 2005, or November 22, 2005.  (Id.)

////

13

In December 2005, plaintiff's counsel made no requests to CSP officials to communicate with plaintiff. In January 2006, plaintiff's counsel made one request for a "Confidential" conference call with plaintiff. (Id. at 21.)

In his opposition, plaintiff contends that his counsel requested confidential phone conferences with him in the requests sent to CSP officials in August 2005 through October 2005. In support of this claim, plaintiff cites the declaration of Thorey Bauer attached to his opposition. (ECF No. 73-1.) In this declaration, Bauer states, in relevant part, that "[p]rior to speaking with [plaintiff] on several occasions, I was not informed by anyone at Calipatria State Prison that my call would be non-confidential unless I requested otherwise." (Id.) This letter does not state that Thorey Bauer requested confidential phone calls with plaintiff in August 2005 through October 2005.

Counsel's apparent ignorance of the regulations requiring her to request a confidential communication does not change the undisputed fact that her requests to communicate with plaintiff from August 2005 until October 31, 2005, did not specifically request confidential phone calls with plaintiff.

D. Undisputed Facts Regarding Chrono Issued October 28, 2005

During the October 28, 2005 call between plaintiff and his counsel, plaintiff attempted to step outside the Correctional Counselor's office with the phone. (ECF No. 60-4 at 6; ECF No. 73-4 at 6.) Defendant Anaya told plaintiff that he would not be allowed to step outside the office during the phone call, and that if he wanted to continue with the call, he needed to remain in the office. (ECF No. 60-4 at 6; ECF No. 73-4 at 6.) Defendant Anaya wrote the chrono to document the occurrence. (ECF No. 60-4 at 6; ECF No. 73-4 at 6.)

E. Undisputed Facts Regarding November 30, 2005 Conference Call

On November 30, 2005, a settlement conference call took place between plaintiff, plaintiff's counsel in Walker v. Gomez, Judge Lewis and defense attorneys, Hefland and Clauss. (ECF No. 60-4 at 6; ECF No. 73-4 at 6.)

Plaintiff's counsel did not send a letter requesting that the November 30, 2005 settlement conference call be confidential. (ECF No. 60-6 (documents send by plaintiff's counsel in

1  response to subpoena).)

2       In his opposition, plaintiff disputes defendants' evidence that his counsel did not request

3  that the November 30, 2005 settlement conference call be confidential.  In support of this claim,

4  plaintiff cites his attorney's declaration, discussed above, wherein she states that prior to speaking

5  to plaintiff on several occasions, she did not know that she had to request confidential phone

6  calls.  This declaration does not state that his counsel in Walker v. Gomez sent a request to CSP

7  officials asking that the November 30, 2005 settlement conference call be confidential.

8  V.  Discussion

9       A.  Claim Two:  Alleged Violation of Right to Confidential Communication with Counsel

10      Plaintiff alleges that defendants' refusal to allow him confidential phone calls with his

11 attorney in Walker v. Gomez violated the Fourth Amendment.  The undersigned construes this

12 claim as alleging a violation of the right to access the courts.

13      *Legal Standard*

14      "It is now established beyond doubt that prisoners have a constitutional right of access to

15 the courts."  Bounds v. Smith, 430 U.S. 817, 821 (1977).  In order for a plaintiff to state a claim

16 for denial of access to the courts, he must show that he suffered an "actual injury" as a result of

17 the defendants' actions.  See Lewis v. Casey, 518 U.S. 343, 354-55 (1996).  Further, in order to

18 establish an "actual injury," an "inmate must show that official acts or omissions 'hindered his

19 efforts to pursue a [non-frivolous] legal claim.'"  Phillips v. Hust, 588 F.3d 652, 655 (9th Cir.

20 2009) (quoting Lewis, 518 U.S. at 351 (alteration in original)).

21      The right of access to the courts is limited to "the capability of bringing contemplated

22 challenges to sentences or conditions of confinement before the courts."  Lewis, 518 U.S. at 356.

23 The right of access to the courts has been found to encompass the right to talk in person and on

24 the telephone with counsel in a private setting.  See Ching v. Lewis, 895 F.2d 608, 609-10 (9th

25 Cir. 1990) (noting that the "opportunity to communicate privately with an attorney is an important

26 part of that meaningful access" to the courts); Jones v. City & County of San Francisco, 976

27 F.Supp. 896, 913 (N.D. Cal. 1997) (noting that lack of privacy in attorney-client consultations

28 raise concerns under both the Sixth and Fourteenth Amendments) (citing Johnson-El v.

Schoemehl, 878 F.2d 1043, 1052 (8th Cir. 1989)); see also Procunier v. Martinez, 416 U.S. 396, 419-20 (1974) (right of access to the courts "means that inmates must have a reasonable opportunity to seek and receive the assistance of attorneys") (overruled on other grounds).

*Discussion*

Defendants move for summary judgment on the grounds that plaintiff's counsel in Walker v. Gomez did not request that the at-issue phone calls, in September 2005 and October 2005, be confidential. As discussed above, it is undisputed that plaintiff's counsel was required to request a confidential phone call. It is undisputed that plaintiff's counsel did not request confidential phone calls with plaintiff during this relevant time period. Therefore, defendants did not deny any request by plaintiff's counsel for confidential phone calls in September 2005 or October 2005.

Plaintiff argues that the phone calls with his counsel in September 2005 and October 2005 should have been treated as confidential even though his counsel was apparently ignorant of the requirement that she request a confidential phone call. The ignorance of plaintiff and his counsel of the distinction between confidential and non-confidential phone calls, and the requirement that confidential calls be requested, does not alter the undisputed fact that his counsel failed to request confidential calls. In the reply, defendants also observe that plaintiff knew from the first call that a correctional officer was sitting in the room during the call. Plaintiff could have told his counsel that the call was not being made confidentially, discontinued the call, and requested a confidential call.

Because it is undisputed that plaintiff's counsel did not request confidential phone calls with plaintiff in September 2005 and October 2005, his claim that his failure to receive the confidential phone calls violated his to access the courts is without merit.

Regarding plaintiff's claim that the November 30, 2005 telephonic settlement conference was not confidential, the undisputed evidence demonstrates that his counsel failed to request that this conference call be confidential. The undersigned observes that the undisputed evidence demonstrates that plaintiff's counsel made two requests for confidential phone calls with plaintiff before November 30, 2005. In other words, plaintiff's counsel was aware of the requirement that

16

she request a confidential phone call prior to the November 30, 2005 telephonic settlement conference.

For the reasons discussed above, defendants' summary judgment motion as to claim two should be granted.

### B. Claim Three: Alleged Violation of State Law

In claim three, plaintiff alleges that defendants Ryan, Bourland, Nunez, Chavarria, Price, Rush and Ayana violated his Fourteenth Amendment rights by failing to follow California Penal Code § 636, which establishes his right to privately communicate with his lawyers. Plaintiff's state law claims were previously dismissed. (See ECF No. 47.) Accordingly, no further discussion of this state law claim is warranted.

### C. Claims One and Four: Alleged Retaliation

*Legal Standard*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).

*Claim 1: Retaliation Claim Against Defendant Anaya for Issuance of Chrono and Alleged Shortening of Calls*

Plaintiff alleges that on October 28, 2005, he attempted to leave the Counselor's Office in order to have his confidential phone call with his lawyer. Plaintiff alleges that in retaliation for exercising this constitutional right, defendant Anaya issued the 128 Chrono and thereafter limited his phone calls with his counsel to fifteen minutes.

As discussed above, it is undisputed that plaintiff's counsel did not request a confidential phone call with plaintiff on October 28, 2005. Therefore, plaintiff was not engaging in protected conduct when he attempted to leave the counselor's office. Under these circumstances, defendant Anaya's issuance of the 128 chrono documenting plaintiff's misconduct advanced the legitimate

17

correctional goals of safety and security. In other words, issuance of the 128 chrono was not retaliatory.

Plaintiff alleges that defendant Anaya limited his phone calls with his counsel after the October 28, 2005 incident. As discussed above, it is undisputed that from October 31, 2005, through December 2005, plaintiff's counsel requested two confidential phone calls with plaintiff, i.e., for confidential conference calls on November 2, 2005, and November 21, 2005, or November 22, 2005. It is undisputed that confidential phone calls are limited to fifteen minutes. Thus, the fifteen minute time limit on plaintiff's phone calls was not imposed for retaliatory reasons, but because they were confidential.

For the reasons discussed above, defendants should be granted summary judgment as to this claim.

*Claim 1: Retaliation Claim Against Defendants Chavarria and Price re: Placement of Enemy on Yard*

Plaintiff alleges that defendants Chavarria and Price retaliated against him for his legal activities by conspiring to return to plaintiff's yard an inmate who had been placed in ad seg for threatening plaintiff's safety. Defendants move for summary judgment as to this claim on the grounds that there is no evidence that they conspired to place an enemy on plaintiff's yard. The undersigned begins the discussion of this claim by describing the evidence submitted by both parties in support of this claim.

At his deposition, plaintiff testified that on November 26, 2005, Lieutenant Santana called plaintiff in to the office and told plaintiff that he was conducting an investigation. (Plaintiff's deposition at 65-67.) Lieutenant Santana told plaintiff that he was collecting information about somebody who was planning to assault plaintiff. (Id. at 66.) Lieutenant Santana did not tell plaintiff the name of the inmate under investigation. (Id.) Lieutenant Santana asked plaintiff if he wanted protective custody. (Id. at 67.) Plaintiff said, "no," and "that was pretty much it." (Id.)

Plaintiff testified that he later found out that the inmate under investigation was inmate Randall. (Id. at 66-67.) Plaintiff testified that he knew that inmate Randall was the inmate who

18

was going to assault him because inmate Randall got wrote up for it.  (Id. at 68.)  Plaintiff

testified that inmate Randall sent word from ad seg that he was in ad seg because plaintiff had

snitched on him.   (Id. at 68-69.)

A copy of a chrono signed by both plaintiff and Lieutenant Santana on November 26,

2005, is attached to plaintiff's opposition.  (ECF No. 73-1 at 51.)  The chrono states,

> On Saturday November 26, 2005, Inmate WALKER, D-92260, D5-
> 118L, was interviewed due to information that was received
> indicating that he had safety concerns on SNY Level IV, Facility
> "D" (refer to Confidential Memorandum dated 11/26/05 authored
> by Lt. Santana located in Inmate Walker's Central File).  During
> this interview, Inmate Walker stated he has no knowledge of an
> enemy or [illegible] concerns on Facility "D" at this time and
> wishes to remain on Facility "D" as indicated by the signature
> below.

(Id.)

In the second amended complaint, plaintiff alleges that on November 28, 2005, Officer

Dominguez asked plaintiff to sign a document stating that he did not consider the inmate placed

in ad seg to be an enemy.  (ECF No. 46 at 9-10.)  Plaintiff refused to sign this document.  (Id. at

9-10.)  Ten minutes after plaintiff refused to sign the document presented to him by Officer

Dominguez, plaintiff was escorted to defendant Chavarria's office.  (Id. at 10.)  Defendant

Chavarria asked plaintiff why he refused to sign the document.  (Id.)  Plaintiff stated that he had

been informed that the inmate placed in segregation planned to assault him.  (Id.)  Defendant

Price entered the office and stated that the inmate had informed him that plaintiff was a trouble

maker.  (Id.)

At his deposition, plaintiff first testified that he did not read the document defendants

Chavarria and Price allegedly asked him to sign.  (Plaintiff's deposition at 69.)  Plaintiff then

testified that he knew from the "circumstances" that the inmate defendants were talking about

was inmate Randall.  (Id.)  When asked again whether he read the document, plaintiff testified,

> A:  I believe I did.  I did.

> Q:  And you don't recall the name of the inmate that it mentioned?

> A:  It was – I don't believe there was a name of inmate on there, but
> it could have been.

(Id. at 70.)

Plaintiff later testified that defendant Price would not speak the name of the inmate described in the document, i.e., plaintiff's alleged enemy. (Id. at 72.) Plaintiff testified that "[b]ut we already knew. I already knew. He didn't have to say the name." (Id.)

In the second amended complaint, plaintiff alleged that he returned to his housing unit where he wrote letters to his attorney and acting Warden Giurbino informing them that defendants Price and Chavarria were trying to set him up to be assaulted. (ECF No. 46 at 10.) Plaintiff alleges his letter to Warden Giurbino was successful because the inmate was not "bailed out of segregation." (Id. at 12.) At his deposition, plaintiff testified that inmate Randall was not moved to his yard from ad seg. (Plaintiff's deposition at 74.)

Defendants have presented evidence that plaintiff's C File does not contain a chrono issued by defendants Price and Chavarria on November 28, 2005, regarding whether plaintiff considered a particular inmate as an enemy. (ECF No. 60-8 at 2.) In his declaration submitted in support of the summary judgment motion, defendant Chavarria states that he does not recall ever approaching plaintiff to sign an Enemy Resolution Chrono. (ECF No. 60-9 at 2.)

> But if I did, it was for a non-confidential enemy who had told the ICC that he had no animosity toward Walker. I have never tried to get Walker to sign an Enemy Resolution Chrono for a confidential enemy, or for an enemy who was in Administrative Segregation for planning to attack Walker.

(Id.)

Turning to the merits of plaintiff's retaliation claim, the undersigned clarifies that plaintiff is claiming that defendants Chavarria and Price conspired to have inmate Randall moved from ad seg back to plaintiff's yard, in order to retaliate against plaintiff for his legal activities. "[T]he mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." Brodheim v. Cry, 584 F.3d 1262, 1269-70 (9th Cir. 2009).

Assuming that inmate Randall was moved to ad seg for threatening plaintiff and, two days later, defendants asked plaintiff to sign the chrono stating that inmate Randall was not his enemy, plaintiff has not presented sufficient evidence that defendants were motivated by retaliation when

20

they allegedly asked plaintiff to sign the chrono. Plaintiff does not claim that defendants made statements to him demonstrating an intent to retaliate against him or to disregard his safety. Plaintiff alleges that defendant Price told him that the other inmate said that plaintiff was the troublemaker. However, this statement does not indicate an improper intent. Plaintiff does not dispute that inmate Randall was not moved back to plaintiff's yard after plaintiff allegedly refused to sign the chrono. Plaintiff's claim that the Associate Warden intervened to stop defendants from returning inmate Randall to plaintiff's yard after receiving plaintiff's letter is speculative and unsupported.

The undersigned acknowledges that although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements). However, plaintiff has not presented sufficient evidence, either direct or circumstantial, demonstrating that defendants were motivated by retaliation when they allegedly asked plaintiff to sign the chrono stating that inmate Randall was not his enemy. Taking into account all of the evidence in plaintiff's favor, it cannot be reasonably inferred that defendants were motivated by retaliation when they allegedly asked plaintiff to sign the chrono. Accordingly, defendants Chavarria and Price should be granted summary judgment as to this claim.

*Claim 1: Retaliation Claim Against Defendant Price Based on Alleged December 7, 2005 Threat*

Plaintiff's retaliation claim against defendant Price based on the December 7, 2005 incident is not entirely clear. The undersigned has previously found plaintiff to be alleging that defendant Price threatened to send him to ad seg for filing the grievance challenging the denial of confidential attorney phone calls. (See ECF No. 34 at 26.) Plaintiff's opposition to defendants' summary judgment appears to adopt the court's prior interpretation of this claim. (See ECF No. 73 at 26.) Accordingly, the undersigned addresses this claim herein.

Plaintiff alleges that on December 7, 2005, he was summoned to defendant Price's office. (ECF No. 46 at 11.) Defendant Price told plaintiff that he was investigating a grievance plaintiff

filed alleging that defendants Rush and Anaya had eavesdropped on his calls with his attorney. (Id.) Defendant Price told plaintiff that he had already interviewed defendants Rush and Anaya and wanted to know if plaintiff had anything else to add. (Id.) Plaintiff replied yes, and suggested a policy should be put in place permitting inmates to place and receive calls with their attorneys in the prison law library, where telephone access was available to send and receive calls outside the prison. (Id.)

Defendant Price cut plaintiff off, claiming one of the calls plaintiff alleged was confidential was not in fact confidential. (Id.) When plaintiff tried to explain that the call was confidential, defendant Price stated,

> I don't have time for this! This is a waste of my time! You may have won the last battle, but you won't win the next one! You know what I mean! Don't play games on my yard! Both green and blue say you are a troublemaker! Just keep this in the back of your mind; the next time I hear you're playing games on my yard, you'll be in the hole! You want to be in the hole now? You want to go to the fucking hole now?

(Id.)

Plaintiff replied, "no." (Id.) Defendant Price then said, "Then take heed to my words and get out of my office. I'm busy!" (Id.) In the original complaint, plaintiff alleges that by "green and blue," plaintiff understood him to mean staff and inmates, respectively. (ECF No. 2 at 14.)

In the second amended complaint, plaintiff alleges that defendant Price's statement that plaintiff won the last battle but won't win the next one, must have been in reference to plaintiff's successful letter to the warden stating that inmate Randall should not be released from ad seg. (ECF No. 46 at 12.) Plaintiff argues that this explains why defendant Price was so upset and stated, "The next time you'll be in the hole!" (Id.)

At his deposition, plaintiff admitted that defendant Price did not carry out the threat to put plaintiff in ad seg. (Plaintiff's deposition at 88.).

Turning to the merits of plaintiff's claim, the undersigned observes that on December 7, 2005, defendant Price interviewed plaintiff regarding the grievance challenging the denial of confidential phone calls. In other words, plaintiff claims that defendant Price threatened to put him in ad seg for filing this grievance during the December 7, 2005 interview.

Defendants argue that defendant Price's alleged statement quoted above does not threaten to put plaintiff in ad seg for filing the grievance regarding confidential phone calls. The undersigned agrees. Defendant Price threatened to put plaintiff in ad seg the *next time* plaintiff played games on the yard. In other words, defendant Price threatened to put plaintiff in ad seg based on plaintiff's future conduct, and not based on the grievance which was the subject of the December 7, 2005 interview.

Although plaintiff does not appear to claim that defendant Price threatened to put him in ad seg if he filed future grievances, in an abundance of caution the undersigned addresses this issue. Plaintiff does not allege that defendant Price specifically stated that he would put plaintiff in ad seg if he filed another grievance. According to plaintiff, defendant Price threatened to put plaintiff in ad seg if he continued to "play games" and be a "troublemaker" on the yard. By accusing plaintiff of playing games and being a troublemaker, the undersigned finds that defendant Price was accusing plaintiff of disobeying rules and/or not getting along with other inmates. This interpretation is supported by plaintiff's claim that defendant Price told plaintiff that both prison staff and inmates thought plaintiff was a troublemaker. In other words, the undersigned does not interpret defendant Price's use of the terms "playing games" and being a "troublemaker" to refer to the filing of administrative grievances.

The undersigned has reviewed plaintiff's deposition testimony and finds that it does not support the retaliation claim against defendant Price. At his deposition plaintiff testified, in relevant part,

> Q: Now, Price had nothing to do with your lack of confidentiality for your phone calls. You're suing him for retaliation?
>
> A: Right.
>
> Q: That was because, when he got your appeal, he made some disparaging comments; right?
>
> A: I wouldn't really characterize them as disparaging. You're trying to put words in my mouth when you ask that question. The reason why?
>
> Q: Yes.
>
> A: It was because – two reasons: One, that when I went to his

23

office to be interviewed about the appeal on them eavesdropping on my conversations, he got upset.

Q: Right.

A: Starts screaming at me, wasting his time, et cetera, et cetera, threatened to put me in the hole, blah, blah, blah. Now, before he kind of got bent out of shape, the conversation wasn't going as well as I would have expected it to go. But during that part of the conversation, he was saying that, well, that wasn't a confidential call. All right. In the appeal I alleged at least five different calls that I talked about. Well, he zeroed in on the one call. The one call had to do with the conference that we had with the judge and the defendants' attorneys.

So we focused on that one. I objected to that. I said, well, I'm not talking about that one. And even if you do, according to the rules, that was confidential as well. And when I gave him that response, that's when he got bent out of shape. Not only was he retaliating, my perception was, he was trying to defend the two staff members that I had appealed against, Rush and Anaya, and he was trying to defend them, and justifying them eavesdropping.

So, he became a defendant for those two reasons.

Q: He never did send you to the hole, right?

A: No. I think if I would have said one more thing, he would have sent me to the hole.

Q: Other than the threats, was there any retaliatory action?

A: Threats?

Q: He threatened to send –

A: The threat is the retaliatory action.

Q: Other than that. Did he threaten to retaliate other than the threats?

A: No.

(Plaintiff's Deposition at 87-88.)

Plaintiff's deposition testimony quoted above does not contain any additional information in support of plaintiff's retaliation claim against defendant Price. Plaintiff's declaration filed in support of his opposition does not address this retaliation against defendant Price. (ECF No. 73-1.)

////

24

For the reasons discussed above, the undersigned does not find that defendant Price threatened to put plaintiff in ad seg for filing the administrative grievance challenging the denial of confidential phone calls, i.e., the grievance that was the subject of the December 7, 2005 interview.[3]

Defendants also argue that defendant Price should be granted qualified immunity as to this retaliation claim. Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence).

As discussed above, taking the facts in the light most favorable to plaintiff, defendant Price did not threaten to retaliate against plaintiff for filing the grievance challenging the denial of confidential phone calls. Accordingly, the undersigned need not consider the second prong of the qualified immunity analysis.

Accordingly, for the reasons discussed above, the undersigned recommends that defendant Price be granted summary judgment as to this claim.

////

---

[3] Defendants also argue that plaintiff's speech verbally challenging defendant Price was not protected. The undersigned does not reach this argument because it is clear that defendant Price was not threatening to put plaintiff in ad seg for the grievance challenging the denial of confidential phone calls, as alleged in the second amended complaint. However, the undersigned observes that plaintiff alleges that the comments he made that upset defendant Price were made after defendant Price invited him to make them. It also appears that the comments were made in defendant Price's office. Under these circumstances, defendants' argument that plaintiff's speech was not protected is not persuasive. See Nunez v. Ramirez, 2010 WL 1222058 at *3-4 (S.D. Cal. 2010) (inmate who verbally confronted prison officials in front of other inmates not engaging in protected speech).

*Claim 4: Alleged Retaliation by Interfering with Confidential Communication with Counsel*

In claim four, plaintiff alleges that defendants Ryan, Bourland, Nunez, Chavarria, Price, Rush and Anaya conspired to retaliate against him for his legal activities by interfering with his right to have confidential communications with his lawyer. As discussed above, plaintiff's counsel in Walker v. Gomez did not request confidential phone calls with plaintiff during the relevant time period, i.e., September 2005 and October 2005. Therefore, defendants did not deny any request by plaintiff's counsel for confidential phone calls.

Because counsel's request for confidential calls were not denied, plaintiff has not demonstrated the adverse action alleged, i.e., denial of confidential phone calls with counsel. Accordingly, defendants should be granted summary judgment as to this retaliation claim.

D. Claim Five: Alleged Failure to Train

Plaintiff alleges that his rights were violated as a result of the failure of defendants Ryan, Bourland, Price, Nunez and Chavarria to train their employees regarding confidential attorney-inmate calls. As discussed above, plaintiff's rights with respect to confidential phone calls with his attorney were not violated. Accordingly, plaintiff's claim that defendants Ryan, Bourland, Price, Nunez and Chavarria failed to train their employees regarding confidential attorney-inmate calls is without merit. Defendants should be granted summary judgment as to this claim.

VI. Plaintiff's Motion to Strike

Plaintiff moves to strike the declarations of defendants Nunez, Rush and Anaya submitted in support of the summary judgment motion. (ECF No 74.) Plaintiff argues that defendant Nunez's declaration conflicts with the declaration submitted by defendant Nunez in response to the October 30, 2015 order. (See ECF No. 70-2 (Nunez declaration).) Plaintiff also argues that the declarations of defendants Nunez, Rush and Anaya conflict with the declaration of Litigation Coordinator Whitcomb submitted in response to the October 30, 2015 order. (See ECF No. 70-1 (Whitcomb declaration).)

The undersigned has reviewed the relevant declarations and does not find any material conflicts. In essence, plaintiff's arguments in the motion to strike challenging defendants'

declarations are the same arguments plaintiff made in his opposition to defendants' summary judgment motion. Plaintiff argues that defendants made up the policies regarding time limits confidential phone calls between inmates and attorneys. Plaintiff argues that the regulations provide that all phone calls between inmates and attorneys shall be treated as confidential, regardless of whether an attorney requested that the phone call be confidential. The undersigned addressed these arguments in the section above addressing the merits of defendants' summary judgment motion.

For the reasons discussed above, plaintiff's motion to strike is without merit.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to strike (ECF No. 74) is denied;

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 60) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 23, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Walk569.sj